ALBANY,
January, 1818.

MANHATTAN
COMPANY
v.
OSGOOD.

President and Directors of the MANHATTAN COMPANY *against* OSGOOD and others.

A voluntary conveyance by a grantor, who is, at the time of making it, insolvent, is void, as respects creditors; and the land, after the death of the grantor, is assets by descent or devise, in the hands of his heirs, or the devisees of the residuum of his estate, in an action by the creditor against the heirs and devisees; and where some of the defendants were also the executors of the grantor, and petitioned the surrogate for the purpose of obtaining a sale of the real estate of the grantor, on account of an alleged deficiency of personal assets, this is evidence as against all the defendants, to show the insolvency of the grantor.

Discounting a note at the rate of *seven* per cent. is not usury.

THIS was an action of *assumpsit* on two promissory notes, made by *Walter F. Osgood*, and endorsed by *Maria Osgood*, against the defendants, as her representatives, who were all either her children, or the husbands of such of her daughters as were married. The defendants, *De Witt Clinton* and *Maria* his wife, *John L. Norton* and *Sarah* his wife, and *Hannah Clinton*, pleaded *riens per discent*, and the plaintiffs took judgments of assets, *quando acciderint*. The other defendants, *Walter F. Osgood*, *Edmund C. Genet* and *Martha B.* his wife, *Samuel Osgood* and *Juliana* his wife, pleaded the general issue, and also, as to the said *Walter*, *Martha*, *Juliana*, and *Susan*, *riens per discent or devise*, to which the plaintiffs replied assets at the time of the commencement of the suit by descent and devise. The cause was tried before Mr. J. *Van Ness*, at the *New-York* sittings, in *December*, 1816.

*Samuel Osgood*, the elder, was seised of several houses and lots of land in the city of *New-York*, and made his will, dated the 8th of *February*, 1792, by which he devised to his wife, *Maria Osgood*, all the estate, both real and personal, of which he was then possessed, or might be possessed, at the time of his decease, and appointed her his sole executrix. He afterwards purchased some lots of land at *Greenwich*, and died on the 23d of *August*, 1813. *Maria Osgood* was, before, and at the time of the death of her husband, seised in her own right of three several houses and lots of land situate in the city of *New-York*, which she conveyed by three several deeds, bearing date the 31st of *May*, 1814; *in consideration of love and natural affection*, to her three daughters, the defendants, *Martha B.*, *Susan K.*, and *Juliana*, respectively.

The notes in question were dated, one, the 25th of *July*, 1814, for 6,000 dollars, payable in 90 days, which was dis-

counted by the plaintiffs, at the rate of 7 per cent. ; the other, the 10th of *August*, 1814, for 500 dollars, payable in 60 days, and discounted at the rate of 6 per cent. *Maria Osgood* made her will on the 27th of *July*, 1814, by which, after several specific bequests of money and chattels, she devised the residue of her real and personal estate to her children, the defendants, *Martha B.*, *Juliana*, *Walter F.*, and *Susan K. Osgood*, and appointed the defendants, *Walter F. Osgood*, *Samuel Osgood*, and *Edmund C. Genet*, her execucutors. The testatrix died on the 8th of *December*, 1814, and the notes, which afterwards fell due, remained unpaid.

A variety of evidence was produced at the trial, to show, that, at the time of the conveyances to her daughters, *Mrs. Osgood* was insolvent; and for that purpose, the plaintiffs also produced the petition of her executors to the *surrogate* of the city and county of *New-York*, stating that the personal estate of the deceased was insufficient to pay her debts, and requesting the aid of the *surrogate* in the premises, pursuant to the statute in such case made and provided : a statement of the estate was annexed to the petition, and which was sworn to by the executors ; but before any order was made they declined proceeding further, alleging that they had acted under a misapprehension. The admission of this testimony was objected to on the part of the defendants, but was allowed by the judge. A considerable part of the debts of the testatrix consisted of endorsements for the accommodation of *Walter F. Osgood*.

The judge charged the jury that the deeds from Mrs. Osgood to her daughters were, on the face of them, voluntary ; that the evidence left little doubt that she was, at the time, insolvent ; that the deeds were null and void as against creditors ; that they were to be deemed, as regarded the plaintiffs, assets, by descent or devise, under the issue joined on the plea of *riens per discent or devise*, in the hands of the defendants who were parties to that issue ; and that the notes on which the suit was brought were neither of them usurious or void. The jury found a verdict for the plaintiffs, for the amount of the notes, with interest. A motion was made to set aside the verdict, and for a new trial.

*Cowdry*, for the defendants. 1. The petition and schedule presented to the surrogate were not admissible, to show that Mrs. *Osgood* was indebted, at the time. They were not the best evidence which the nature of the case admitted. The original bonds and notes ought to have been produced, by which it would have appeared, that most of the debts were those of Mr. *Osgood;* and his debts ought to be taken into consideration, in determining whether the conveyances were voluntary or not. The statement made by one of the heirs ought not to be binding on the others. It is analogous to a bill in chancery, on which no proceedings have been had, which is not evidence. (*Bull. N. P.* 235. *Gilb. Law of Ev.* 49.) The answer in chancery of a co-defendant is no evidence against the others.

2. The houses and lots of land conveyed by Mrs. *Osgood* are not to be considered as *assets* by descent. If the statement is rejected, there is no evidence that she was largely indebted at the time of the conveyance. She owed 22,000 dollars, which was amply secured by mortgages on property, of the value of 47,000 dollars. Her endorsements of the notes were, at most, *contingent* debts, and might never become certain. The makers of those notes were, at the time, perfectly solvent. Subsequent debts are not to be taken into consideration, in case of settlements, or conveyances, by way of family provision. (*Rob. on Fraud. Conv.* 18, 19. 24. 451, 452, 453. 1 *Bro. C. Rep.* 90. 2 *Atk.* 13. 3 *Co.* 81. *b.* 2 *Ves.* 10. *Amb.* 598. 2 *Ver. n.* 491.)

3. The notes were usurious and void. If a person receives illegal interest before it is due, and this is made part of the original contract for the loan, it renders the security void. (*Ord on Usury,* 102. *Floyer* v. *Edwards, Cowp.* 114. *Cro. Jac.* 26.)

4. The charge of the judge was incorrect. Whether the original contract was a loan of money on receiving the discount or not, was a question of fact for the jury to decide; but the judge charged the fact positively, that the notes were not usurious or void. (*New-York Fire. Insurance Company* v. *Walden,* 12 *Johns. Rep.* 613, 1 *Bos. & Pull.* 144 )

*Slosson* and *T. A. Emmet*, contra. All the estate of Mr. Osgood is devised to his wife, who is made sole executrix; and she is the legal debtor, in respect to the estate devised to her. His debts, therefore, must be taken into consideration, on the inquiry into the effect of a voluntary conveyance. Mrs. *Osgood* died largely indebted. [Here the counsel entered into examination of the statement and accounts given in evidence, by which it appeared that she owed, at the time of her death, beyond the amount of her estate, above 29,000 dollars; and, including the bonds, about 42,000 dollars.] Even if the petition and statements exhibited to the surrogate are rejected, there is sufficient evidence of the insolvency of Mrs. *Osgood.* Admissions which go to charge the persons making them, are evidence as to third persons. (*Phillips' Ev.* 191, 192, 193. *Doe v. Robson,* 15 *East,* 33.) The petition was presented by the legal representatives, the executors of Mrs. *Osgood.* She ordered her executors to pay all her debts. It was their duty so to do, and for that purpose they applied to the surrogate for an order for the sale of the real estate. Precise evidence of the insolvency, or indebtedness, is not requisite; it being merely a collateral fact. If a person greatly indebted makes a voluntary conveyance to his children, his being in debt at the time is evidence of legal fraud, which vitiates and avoids the conveyance, to all intents and purposes, as against his *creditors.* A total insolvency need not be shown. Such conveyances being to delay, hinder, and defraud creditors, are void as to them. In such case, the law adjudges the legal estate to remain in the debtor, so as not to pass under the devise, or voluntary conveyance. It is immaterial whether the debt is as principal or surety, as maker or endorser, or whether due or to grow due. The object of the statute against fraudulent conveyances is, to keep the estate of the debtor for his creditors, and for them only; avoiding the conveyance as respects them, but leaving it to stand as to other persons. (*Twine's Case,* 3 *Co.* 81. *b.* 5 *Co.* 60. 2 *Vesey,* 11. 1 *Atk.* 15. 1 *Vesey,* 27. *Rob. Fraud. Conv.* 17, 18. 459, 460.) The fraud need not be pleaded. The lands conveyed become *assets* in the hands of the heir. (*Dyer,* 295. *b.* p. 16. *Jenk,* 295, case 45. *Shep. Touch.*

ALBANY,
January, 1818.

MANHATTAN
COMPANY
v.
OSGOOD.

65, 66. 2 *Saund.* 7. n. 4. *Rob. Fraud. Conv.* 596.) The only case which countenances a contrary doctrine is that of *Parslow* v. *Weedon*, in 1718, (1 *Eq. Cas. Abr.* 149. s. 7.) determined by Lord *Macclesfield*, whose decision excited great surprise and dissatisfaction among the bar at the time. That case is not regarded as authority, but as a *dictum* merely of Lord *Macclesfield*. (*Prec. Ch.* 520. note. *Jones* v. *Marsh, Cases Temp. Talbot*, 64.) In *Jackson* v. *Burgott*, (10 *Johns. Rep.* 457. 463.) the court say that no estate passes to the purchaser by the fraudulent deed. " Such fraudulent estate is as no estate in judgment of law." Where a devise is to an heir, he may be charged both as heir and devisee. (2 *Saund.* 7. n. 4.)

*Discounting* a note at the *legal* rate of interest is not *usury*. In *Lloyd* v. *Williams*, (2 *Wm. Bl.* 792.) *Blackstone,* J. said, that interest might as lawfully be received beforehand, for forbearing, as after the term had expired, for having forborn ; and that it was not to be reckoned as merely a loan for the balance ; otherwise, every banker in *London* who takes five per cent. for discounting bills, would be guilty of usury. The act passed at the last session, allowing banks to discount notes for more than 60 days, at 7 per cent. shows the sense of the legislature on this point. Discounting is merely deducting the interest from the amount, at the time of the loan. (1*Bos. & Pull.* 144. 2 *Term Rep.* 52. 1 *Campb. N. P. Rep.* 177. 2 *Campb. N. P. Rep.* 33.)

*S. Jones*, jun. in reply, insisted that if the answer of one defendant in chancery did not charge his co-defendant, by parity of reasoning, the admission of one heir could not charge his co-heirs.

That in estimating the amount of debts, the bonds and mortgages cannot be taken into the account.

But whatever may be the effect of the conveyance, it so far changes the legal descent of the property, that the defendants cannot be charged, as heirs, for *assets by descent.* The case of *Parslow* and *Weedon* has never been overruled. The deed was not absolutely void, but merely voidable. If the grantee had sold the land to a *bona fide* purchaser

ignorant of the fraud, such conveyance would be valid.(*a*) ALBANY, January, 1818. The deed is good against the parties, and the heirs and devisees of the grantor, and against creditors, until they come MANHATTAN COMPANY v. OSGOOD. in to set it aside. At the time of Mrs. O.'s death, there was no question as to the validity of the conveyance. In *Jackson* v. *Burgott*, the grantor was still living. Besides, Mrs. O. does not devise these lots to her children, but recites these conveyances, and then devises the residue of her estate. The grantees did not take as heirs, for there were other children.

If it is part of the contract to pay the interest in advance, it is usury. A person may lawfully stipulate for the payment of interest weekly; for then there is no interest paid, until after forbearance.

YATES, J. delivered the opinion of the court. The executors, as the legal representatives of the deceased, had exhibited the statement under oath, and filed it, with the petition, in the surrogate's office, with an intention of obtaining an order to sell the real estate, but which was, afterwards, abandoned. It appears to me that the executors, of all others, were the best informed on the subject, and were competent to make admissions sanctioned by their oaths; particularly as to a collateral fact. Those documents were, therefore, properly admitted in evidence,(*b*) as stated in the case, for the purpose of showing the testator's indebtedness, on the 31st of *August*, 1814; and unless a mistake had been made in the statement, which might have been shown on the trial, it must be entitled to great weight. (1 *Phillips' Ev.* 192. 15 *East*, 34, 35. 4 *Johns. Rep.* 461.) The executors were certainly competent to know the fact, and the evidence appears to me to be the highest of which the nature of the case is susceptible It goes to show, most decidedly, the fact of insolvency at the date of those deeds; nor would the result be different, if the estate of the husband, and the bonds alleged to be executed by him, were excluded. It is evident, then, that the situation of Mrs. *Osgood*, at the date of those conveyances, rendered

(*a*) *Sed* vide *Hildreth* v. *Sands*, 2 *Johns. Ch. Rep.* 35.
(*b*) Vide *Johnson* v. *Beardslee and others*, ante, p. 3.

ALBANY,
January, 1818.

MANHATTAN
COMPANY
v.
OSGOOD.

them void, as regards the plaintiffs in this cause; and the law is well settled, that if a party executes a voluntary conveyance, indebtedness, at the time, is evidence of fraud; and where such indebtedness is to the extent shown in this case, it is sufficient to render the conveyances inoperative and void, as to creditors.

. That part of those debts had originated in consequence of endorsements by Mrs. *Osgood*, for her son, does not alter the case, in construction of law; and the testimony clearly shows that she could not have been solvent at that period; and that long before the date of the conveyances, she was, from time to time, wholly dependent on her credit for funds. It was, then, illegal for her, while those embarrassments continued, to convey to her daughters. (3 *Coke*, 81. *b*. *Twine's Case*, 1 *Atk*. 15. 94. 2 *Atk*. 600.)

If, then, those conveyances were fraudulent and void, the fee remained in Mrs. *Osgood*, and, as to her creditors, it was the same as if she had never conveyed. (3 *Rep*. 78. *b*. *Dyer*, 295. pl. 16.) The title to the estate must, consequently, be governed by her last will and testament, by which, after sundry bequests and legacies, she devises to her children, parties to this issue, all the rest of her estate, both real and personal. The lots for which the void conveyances were given constitute a part of that residue, and, of course, must be held by them under this devise, and be equally liable for the payment of the debts of the deceased, with the other real estate of which she died seized, and are assets by devise.

There is no ground for the allegation that the notes are usurious, for it cannot be questioned that it has been the uniform practice of all banking institutions, since their establishment, to exact the payment of interest in advance; and it would be an alarming principle to introduce, that all paper thus held should be usurious and void. The law, however, does not require such a decision. It supports a different and more salutary principle, and more conducive to mercantile convenience, by allowing bankers to receive the interest in advance. (2 *Bl. Rep.* 792. 1 *Bos. & Pull.* 144. 2 *Term*

*Rep.* 52.)   The court are, therefore, of opinion, that the
plaintiffs are entitled to judgment.

Judgment for the plaintiffs.