Jones, Chancellor,, and Golden and Geary, Senators,
delivered opinions in favor of affirming the.- decision-of the court below. , .
*398 Tallmadge, President, and Spender and Yiele, Sen•fttors, delivered opinions in favor of reversal.
The opinions delivered, proceeded-upon different views-; .-and neither was -adopted as containing the ground upon -which the court -put their decision, the vote being on the question of affirmance or reversal, generally. I have, therefore, put down, in the marginal-note, the-point which ^appears to -me necessarily involved in the-decision; .that ¡is to say, a'line of discount'beyond-which-the ¡banks . can-mot go without-being guilty of usury. [1]
After opinions were delivered by different members of the-court-as -above.mentioned, on the clerk proceeding to call for the votes of members -upon the general question of affirmance or reversal,
Tallmadge, President, claimed the right to be called, and to vote with-the other-members of the court.
.Jones, Chancellor,
said that, -as this was contrary to all former practice, the vote should-not be received without the -express sanction of the court.
The President addressed the court in favor of the claim, which -he put distinctly before them: that it was “ the right and duty of the president of the -senate, as a member of this court, - to give opinions, and vote on questions as they arise.” He-said,
I have hitherto foreborne, from -delicacy, to-claim of to exercise this right, as incident to the- president of the senate, because of the usage in compliance with the 11th section of the act, (1 R. L. 135,)-which says, “ That all questions arising upon writs of error and appeals in the said court, for the trial of impeachments and the correction of ,-errors, .shall be determined by a-majority of the.members - present; and if .such members be equally divided in opinion, the president of the senate shall have- a casting vote in .the decision,-but shall not vote in any-other case.”
*399 The 7th section of the third article of the constitution “ The lieutenant governor shall be president of the senate; but shall have only a casting vote therein.”
The 5th article of the constitution of this state says, “ The court for the trial of impeachments and the correction'of errors, shall consist of the president of the senate, the senators, the chancellor, and justices of the supreme court, or the major part of them.” It then provides, that when an impeachment is prosecuted against the chancellor or judges, they shall be suspended till acquittal; and *that when the appeal is from the chancellor, he shall have no final voice; and when from the judges, they shall not have a voice on affirmance or reversal.
These two sections mark the difference: By the first, the lieutenant governor is made president of the senate, .with only a casting vote therein ; 'by the second, the president of the senate is made a member of the court, without restriction to a casting vote, which restrictions are provided, in certain cases, against the chancellor and judges. The lieutenant governor is not a member of the senate, while the president of the senate is member of the court. The restriction in the one case to a casting vote and its omission in the other, demonstrates the meaning of the constitution. The lieutenant governor forms no part of a quorum in the senate, while in the court to consist of the president, the senators, the chancellor, and justices of the supreme court, or a major part of them, the president must be counted as much as the chancellor or any other member.
My predecessors appearing to have acquiesced in the restrictions of the statute, have omitted to perform the duties of a member, and have exercised only the right of a casting vote. But I insist, the president of the senate holds his place in this court, is charged with the full duties of a member, and derives his authority from the constitution, independent of, and without the power of abridgment, by legislative authority. The president of this court ought to vote as a member, in the same manner as the chief justice of the United States in that court.
The same authority which may limit the duties and *400 rights of the president of the senate, as a member of this # ™ • constitutional court, may hereafter, at pleasure, designate some other member, and deny his general rights, or even limit the chancellor, the chief justice, or members of the supreme court, to give opinions, and to vote only upon some -contingency»
At the close of being a member of this court, and when it cannot be imputed to any improper desire to enlarge the powers of this place, I have felt it a duty, as president of "the senate, to declare and exercise, in a single instance, the full rights of a member, in order that the precedent of legislative authority, limiting constitutional rights and duties, should no longer remain uncontradicted ; and that I might surrender this chair to my successor, charged with its proper responsibilities; and unshorn of any of its con stitutional privileges.
Several members expressing themselves unprepared, at the moment, to decide,
The President said he had offered the vote with a view to have the question settled; but would not press it so as to preclude a proper degree of deliberation. He, therefore, waived his claim for the present; and the vote was taken as follows:
For affirmance, Jones, Chancellor; Allen, Burrows, Burt, Golden, Crary, Ellsworth, Hager, Hart, , Lake, Mallory, McCall, McIntyre, Ogden and Smith, Senators.
por affirm. ance>15-
For reversal, Earll, Gardiner, Haight, Keyes, Spencer, Viele, Wilkeson and Wright, Senators.
por reTer8al> 8-
Golden, Senator,
for the purpose of finally settling the question raised by the president, submitted a resolution in favor of his claim, which was laid over for advisement to another day, when it was withdrawn, after the following remarks by the mover:
Golden, Senator.
When the claim of the president to vote on a writ of error, first presented this question, I had *401 ™ min<^ *he new constitution, and recollecting that it by that- instrument, that this court.shall consist of the president of the-senate, the senators, the-chancel- .¡or and.judges of the-supreme court, I had a strong impression that the-president had "as unqualified aright .to vote as any other member. With that impression -I proposed the resolution under consideration. I am pleased that the matter has not been decided precipitately, and-that some little time-has been allowed for consideration and Reflection. I now very much doubt whether the president has the right -which has been claimed, which extends not only to writs of error, but to appeals, ¡and to ¡all questions arising on either.
These do'ubts -first arose, when in -the course .of my reflections on the subject, I considered the very great inconvenience, not to say injustice, which might, and probably would often result from the court being equally divided on these questions. If upon a question on a writ of .error, this court, the president voting with the other members, should be'equally divided, no judgment could be rendered. 'The record would foifever "remain here; the parties would Stand asfthey did before the suit was commenced, and each would have to'sustaih his own costs and expenses. "This, so far as writs of error are concerned, might be very únjust; but much greater injustice might result from an equal division "of this court on questions on appeals. Suppose, in one of "those causes which so frequently occur in a court of equity, to settle an' estate, "or the complicated accounts of a partnership, there -should arise a difference of opinion in this-court, and its members should be equally divided on only some one point of many which might be presented, the record could never be remitted, and the matter might remain forever unsettled. -An unjust;partner, guardian, executor or trustee, might be left to triumph in his wrong.
-These inconveniences, or this injustice, would-grow, not "only out of decisions on final questions on writs of error or appeals, but a question might arise in the progress of a case, whether of la-tv or equity, which, if this court were equally *402 divided, and should continue to be so, would prevent the ' , . . cause from ever being finally decided on the merits.
„ , , It must be admitted, that if there may be such occurrenees in this court, its organization is very imperfect, and we ought to hesitate before we pronounce that the sages who established it, had" so little wisdom as to encumber it with such constitutional provisions as would render it inadequate to the administration of justice;
""Still, if the president has a constitutional right to vote, neither we, nor any other power on earth, can deprive him of it.
We cannot decide this question without looking back to the old constitution, and to the law of 1801, concerning the court for the trial of impeachments and the correction of errors. It is to "be observed that the old constitution does not organize the court. It declares that such a court shall be instituted, under the regulations which should be established by the legislature. It then points out of whom the court shall consist, and unquestionably designates the president of the senate as one. Very soon after the first organization of the state government, the legislature, in pursuance of the power given to it to institute and to regulate the court, passed an act, of which the act of 1801, entitled an act concerning the court for the trial of impeachments and correction of errors, is a transcript. By the last section of this act, it is provided that the president of the senate shall have a casting voice on decisions on writs of error and appeals, but that he shall not vote in any other case. Now, if this law were not unconstitutional under the old constitution, and is not repugnant to the new constitution, it is yet in force.
The power to institute and to regulate the court for the trial of impeachments and correction of errors, given by the old constitution to the legislature, did give it, as it appears to me, authority so to organize the court as that it might subserve the administration of justice: and when the great inconvenience, to say the least, which might result from an equally divided court was seen, I think the legislature acted not only wisely but constitutionally, in *403 PrescribinS regulations which would obviate such great dif■bcU'b^eS‘
The speaker of the house of assembly is deprived of the jigkt of voting, and he is no less a member of that house, than the president of the senate is a member of this court. He can only vote when his vote will equalize the house; whereas, according tojthe law of 1801, the president can only vote on the decisions of writs of error *and appeals, when the other members of the court are equally divided. How, if the assembly, which is only one branch of the legislature, can, in virtue of the power given by the constitution to each house to determine the rules of its own proceedings, exclude its speaker from voting, surely the legislative body, in virtue of the power which was given to it by the former constitution, to institute this court, and to establish regulations for it, might impose such restrictions on the right of the president to vote, as were necessary to render the court capable of performing, in all cases, the functions for which it was established. I think a constitutional provision should never be so construed, if it can possibly be avoided, as to defeat what it is obvious was its object.
In reflecting on this subject, I could not but call to mind the great men by whom the original law of which the act of 1801 is a transcript, was passed, and that that act was a contemporaneous exposition of the constitution, made by those exalted characters who were its framers. It should also be borne in mind, that this exposition had been sanctioned by the practice of half a century, and that in this time, men not less zealous of their rights than we are whose talents and virtues deserve veneration, have filled the stations we now occupy.
Under the impression of these considerations, I should think it would be an act of great temerity, at this day, to decide that the law of 1801 was a violation of the old constitution. If it were not, it was in force when the new constitution was passed, and continued by the 13th section of the 7th article of that instrument, which provides that such acts of the legislature as were then in force, should be and *404 continue the law of the state, subject to such alterations . as the legislature should make concerning the same. But the same article declares, that all such acts and parts of acts as were repugnant to that constitution, were thereby abrogated.
The question then occurs, is the law of 1801, so far as it denies to the president any other than a casting vote, repugnant to the new constitution ?
*It is to be noted, that the new constitution does not establish this court. It was instituted under the old constitution, and the new constitution recognizes it as existing. The 1st section of the 5th article of the new constitution provides, “That the court for the trial of impeachments and correction of errors, shall consist of the president of the senate, the senators,” &c. The law which established the regulations of the court was then in force, and it seems to me, that the new constitution must be considered as having adopted the court as it was then regulated. The power given to the legislature by the old constitution, to institute and regulate the court, was unnecessary in the new constitution, because the court was instituted and was regulated; and therefore the new constitution is content with expressing the will of the convention, that the same persons of whom the court consisted under the old constitution, shall continue to compose it under the new.
These are my present views of the subject. While I en. tertain them, I cannot vote for so great an innovation on the long established practice of the court, as it would be to consent that the president shall have an unqualified right to vote.
The question is so important, that it should not be decided hastily. I had rather, therefore, that it should lay over until there can be due time for consideration, which certainly the few hours which remain of our present session will not admit. With the hope that the president will not think it incumbent on him to urge at this time his claim, I ask leave to withdraw the resolution.

 See Waterman’s Am. Ch. Dig., vol. 4, tit. Usury.