NEW-YORK,
May, 1830.

Utica Ins. Co.
v.
Bloodgood.

THE UTICA INSURANCE COMPANY *vs* BLOODGOOD.

A promissory note, *void* on the ground of being discounted by an incorpora-
ted company not authorized to carry on banking business, is nevertheless
competent evidence, *it seems*, in support of the money counts.

The taking of *interest in advance*, or discounting a note by a company not
possessing banking powers, does not render the loan usurious.

A stipulation not to plead the statute of limitations in a prosecution for any
balance that may be due on a *note* particularly described, may be used in
support of the money counts, though the note be adjudged illegal and void.

Where a director of a monied institution renders extra services for the com-
pany, and during a period of eight years that he continues a director af-
ter rendering such services, presents no account and makes no claim for
compensation, and there is no express contract on the part of the compa-
ny to pay for such services, a contract to pay will not be implied.

MOTION to set aside report of referees. The declaration
was on a promissory note, dated April 28th, 1818, for
$1900, drawn by the defendant, payable six months after
date to C. C. B. and endorsed by him, and also on the mon-
ey counts. At the hearing before the referees the note was
proved, and a stipulation, dated August 26, 1824, signed
by the defendant, was produced, in the following words:
"Whereas the Utica Insurance Company hold my note, da-
ted April 28, 1818, endorsed by C. C. B., for $1900, now
therefore I hereby agree not to plead the statute of limita-
tions in a prosecution for any balance that may be due on
said note." A balance was shewn to be due on the note.

The defendant was a stockholder of the company to the
amount of $1750. The note in question was, in renewal
of a former note, taken to enable the defendant to pay for
his stock, and also to pay an additional instalment upon
stock. It was proved that the company had no stock notes,
as usually termed, that when a note was discounted for the
accomodation of any of the directors or stockholders, the
avails were placed to his credit, and were subject to his
checks as in ordinary cases. The note in question was dis-
counted by the company as a banking operation; the dis-
count was taken in advance, the defendant being charged
with the interest for six months and the three days of grace,

which were computed as the *tenth* part of a month, and the residue placed to his credit. The interest, according to the mode of calculation adopted by the company, amounted to $67,72 ; but only the sum of $67,12 was retained, which was less than at the rate of seven per cent. per annum. On the 27th of September, 1824, a committee, appointed by the board of directors, wrote the defendant, requesting payment of his note, and informing him that they were authorized to accept his stock in part payment, at a fair and reasonable price. The company had agreed to take stock assigned to them in payment of debts, at $11 per share, which was its *par* value. Shortly after writing the defendant, he transmitted to the secretary of the company an assignment of 25 shares of the stock, to be passed to his credit at $11 per share. The secretary communicated to him a resolution of the board, that an assignment of stock could not be received unless accompanied by an immediate payment of the balance remaining due on his note. The secretary stated that the assignment was returned to the defendant, and that the stock had become forfeited.

The company went into operation in 1816, at which time the defendant was a director and acted as president *pro. tem.*, was a very efficient and active member of the board, and made several journies on the business of the company ; for which services the president and secretary of the company at that time, both testified that they considered him entitled to compensation. On the part of the company, it was shewn that the defendant was a director from 1816 until 1824 ; that after the year 1818, he rendered no services other than the ordinary duties of a director ; that he never presented any account, or made any claim for compensation for services while he was a director ; and that for the ordinary services of a director no compensation was made. While the company carried on banking operations, it had at all times a fund not employed in insurance business.

Upon this state of facts, the defendant insisted, 1. That the Utica Insurance Company was not authorized to carry on banking business, and that therefore the note discounted by them was illegal and void ; 2. That the note was void for

NEW-YORK,
May, 1830.

Utica Ins. Co.
v,
Bloodgood.

usury; 3. That the plaintiffs were barred from a recovery as for money lent, by the statute of limitations, (the same having been pleaded,) the *stipulation* not to plead the statute being confined in its terms specifically and solely to the note; and 4. If neither of these grounds of defence was allowed, that the defendant was entitled to a set off of $275, the value of the 25 shares of stock assigned by him, and also to an allowance of extra services as a director of the company. The referees decided against the defendant on each one of these grounds, and reported in favor of the plaintiffs for $866,22; to set aside which report a motion was now made.

*M. T. Reynolds* for defendant.

*J. A. Spencer*, for plaintiff.

*By the Court,* SUTHERLAND, J. It was decided in the case of *The People* v. *The Utica Insurance Company*, (15 Johns. R. 358,) that the act of incorporation did not confer upon the company banking powers, and in *The Utica Insurance Company* v. *Scott*, (19 Johns. R. 1,) it was held as it had also been in the previous case, that the restraining act, (2 R. L. 134, § 2) was applicable to *incorporated* companies, as well as other associations, or individuals who carried on banking operations without legal authority; and that the notes and securities given to this company for the purpose of being discounted, and actually discounted by them, were null and void as being within the express provisions of the *restraining act*. But it was also held that there was a distinction between the *security* and the *contract* of lending; and that as the lending of money was not declared to be void, wherever money was lent, it might be recovered under the common counts, although no action could be sustained upon the security itself. The plaintiffs, therefore, cannot recover in this case under the count upon the note.

But the note, though illegal and incapable of being the foundation of an action, may still be used as evidence; it is void only as a security; but I apprehend it is competent evidence under the money counts. There is, however, other evidence of the receipt of the money by the defendant. It

was proved that whenever any note was discounted for the accommodation of any of the directors or stockholders, the avails were placed to his credit, and were subject to his checks as in ordinary cases; that the money produced by this note was applied by the defendant in payment of a former note given to the company and an instalment due on his stock. He therefore received the money and appropriated it to his own use.

Was there any usury in the transaction? The book keeper in the plaintiff's office in 1818, and whose duty it was to calculate interest on all notes discounted by the company, testified, that where a note was drawn like this payable in six months, his habit was to cast the interest for half a year and the three days of grace, estimating them as one tenth of a month. Upon examining the note he further testified, that there was a memorandum upon it consisting of the figures $67,12, in his hand writing, which he supposed were intended to indicate the amount of interest retained on the note; that the interest upon this note for six months, calculated upon the principle which he had stated, would amount to $67,72, *sixty cents* more than was actually received. The principle stated by him was correct, except as to the days of grace; and his testimony, taken together, I think warrants the conclusion, that something less than seven per cent. was in fact taken in this case. The retaining the interest or taking it in advance did not render the note or loan usurious. This was expressly decided, in relation to negotiable paper discounted by a company not possessing banking powers, in the cases of the *New-York Fireman Insurance Company* v. *Sturges* and *The same* v. *Ely*, (2 Cowen, 664, 678, 703.)

The defendant is estopped by his stipulation from availing himself of the statute of limitations. This stipulation is not confined to an action upon the note itself; it was undoubtedly intended to apply to the debt or loan of which the note was the evidence. Suppose there was no usury in the case, and that the count upon the note had not been sustained upon the trial on account of the variance between the note described and that produced in evidence, it would hardly have been

contended, because the recovery was not upon the note specifically, but on the money counts, that the defendant was as liberty, under this stipulation, to avail himself of the lapse of time. Such a construction I am pursuaded would do violence to the intention and understanding of the parties. The note was spoken of only as the evidence of the debt.

The set-off of the 25 shares of stock offered by the defendant was properly rejected. The letter from the committee of the company to the defendant did not contain any definitive proposition which was to become a binding contract between the parties upon its being accepted by the defendant. It merely informed him that they were authorized to accept his stock in *part payment* of his note *at a fair and reasonable price ;* and expressed a wish that he would communicate with them on the subject without delay. It was merely the opening of a negotiation, not a formal and distinct proposition. Neither the amount which would be received, nor the price of the shares was specified. It is evident that nothing more was intended than to inform the defendant that his note must be paid, and that his stock, to a certain amount, would be taken by the company. If it were to be considered a proposition to receive a portion of the defendant's stock *in part payment*, the very proposition, in connection with the general scope of the letter, implies that the residue of the note must be paid also and at the same time. But there was nothing definite or binding upon the plaintiffs. They had a right to add the condition which they subsequently insisted upon.

Nor was the defendant upon the evidence in the case entitled to compensation by way of set-off for the services rendered by him as a director, to the company. All his extraordinary services were rendered prior to 1818, and he never presented to the company any account, or made any claim against them for compensation. There was no express contract on the part of the plaintiffs to pay him any thing ; and I think, under the circumstances of the case, none can be implied.

Motion to set aside report of referees denied.