DARIUS SESSIONS, et al. *vs.* WILLIAM RICHMOND, 2d.

The second section of the " act fixing the rate of legal interest," which makes the parties, upon a special plea of usury, legal witnesses, is as applicable to suits in Equity as at Law.

There can be no stipulated damages for the non-payment of money except legal interest.

A. being indebted to B. on mortgages, under which B. had advertised a sale, paid B. $500, to have the sale postponed, on the following agreement, viz : that if A. paid the debt on or before a certain date, said $500 should be taken as part payment of said debt ; if prior to a certain other date, a part of the $500, proportional to the time prior to the second date at which said debt should be paid, should be applied in part payment of said debt; and, if not paid till after second date, the $500 to be forfeited ; both dates having past and the debt not having been paid : it was held, that B. had no right to hold the money as forfeited, unless with the assent of A. given after the time fixed for the forfeiture.

Interest at the end of every month may be charged and recovered, if such be the contract, although the principal may not be due.

Rent will not be considered a cover for usury unless it be so excessive that, taken in connexion with other facts, it affords a presumption that such is the intent.

Costs on a bill to redeem, are to be awarded against the complainant, where the question is as to the amount due.

THIS was a bill in equity to redeem six mortgages executed by Sessions to Richmond, at different dates, between July 10th, 1844, and December 13th, 1845, and conditioned for the payment of several promissory notes and other amounts due the respondent or stipulated to be paid. After reciting these mortgages and stating that a large amount had been paid on the various notes secured thereby and that the respondent claimed a balance of $9,883 95, the bill alleged that the account on which

this balance was claimed, contained divers items of usurious interest, direct and indirect, of damages erroneously alleged to have been incurred by reason of the non-payment of the notes aforesaid, and sundry other errors and omissions of proper credits of payments made, &c., amounting to $2,743 01, or upwards.  The bill further alleged, that on the 24th day of February, 1847, said Sessions paid the sum of $4,250 to said Richmond, and applied a part thereof, sufficient to pay the same, to the payment of the amount secured on a mortgage executed by him and his wife, of property belonging to his wife, and that he claimed that the said Richmond should cancel and discharge the same, and now in the bill, prayed that this mortgage might be declared discharged.  The bill concluded by praying that an account might be taken and the complainant be permitted to redeem, upon the payment of what should thus be found to be due.

The answer, after admitting the execution of the mortgages and stating the considerations upon which they were given, proceeded to show the manner in which the balance against Sessions originated, by setting forth several contracts.  From these it appeared that on the 13th of December, 1845, Sessions agreed to pay Richmond the sum of $500 monthly, the same to be first applied every month to the payment of the interest and rent due to Richmond, and the surplus to the principal, and Richmond agreed to postpone a sale of the mortgaged premises which he had advertised.  This agreement not having been kept, Richmond advertised the mortgaged premises for sale, and on the 28th of August, 1846, it was agreed that the indebtment of Sessions was $13,151 67, on which Sessions agreed to pay, until the first of July

following, interest monthly in advance, and also to pay rent monthly in advance for a house belonging to Richmond, which he occupied, and Richmond again agreed to postpone the sale. Upon the basis of this contract, Richmond rendered his accounts monthly, which were admitted by Sessions to be correct, but, not being paid, Richmond again advertised the premises for sale, and in consideration of a postponement of the sale, Sessions agreed that the sum due to Richmond on the 1st of December following, 1848, would be $8,906 54, and agreed to pay the same at that date, or in default of payment, to pay the sum of $500, as stipulated damages. This agreement not having been complied with, Richmond again advertised the premises for sale, and on the 1st of February, 1849, Sessions, together with one Henry Whitman, obtained a postponement of the sale, and it was agreed that Whitman should pay the sum of $500, in cash, on account of Sessions, to Richmond; that the indebtment of Sessions would on the 1st of June, 1849, amount to $9,883 95, and it was further agreed if that sum should be paid on or before the 16th of February, at 10 o'clock, A. M., (deducting rents and interest after that time included in the above sum,) the $500 should be taken as part payment of the said debt; if the said sum was not paid on or before the 1st of June, 1849, the said payment of $500 should be forfeited as agreed damages; if said sum was paid in full at any time before the 1st of June, a proportional part of the $500, should be applied in part payment of the said debt, in proportion as such payment should be in anticipation of the 1st of June. Whitman guaranteed the payment of rent for the house occupied by Sessions and that possession thereof should be surrendered on or before April 1st, 1849.

These stipulations were not complied with, and, on the 14th of June, 1849, this bill was filed and an injunction granted upon the sale of the mortgaged property.

This case was argued upon the bill and answer, and on full testimony as to the nature of the dealings between the parties.

CARPENTER and COZZENS, for plaintiffs.

TILLINGHAST & BRADLEY, for defendant.

GREENE, C. J.—This is a bill to redeem several mortgages and charges, among other things, usury on the debts secured by the mortgages.　Carpenter and Cozzens of counsel for the plaintiff, moved for an order to examine the plaintiff touching the charges of usury, and referred to the Digest of 1844, page 286, section 2d, in support of the motion.

This section provides that, " If any action or suit shall hereafter be commenced upon any bond, specialty, agreement, contract, promise or assurance, whatever, which shall be made within this State, after the passing of this act, and the defendant shall allege by special plea that a higher or greater interest than the rate aforesaid was taken or was therein or thereby secured or agreed for, the Court shall and may admit the defendant as a legal witness upon the issue joined in such action or suit, to testify relative to the motive and circumstances of such agreement, and shall also, on motion of the plaintiff, admit such plaintiff as a legal witness in like manner."

This motion was resisted by Bradley of counsel for the defendant, upon the ground that the provisions of the act referred to, applied only to suits at law, and not to a bill in equity.

It is true a bill in equity is not within the words of the

act, but we think it is within its spirit.  We think the intent of the law was to admit the borrower and lender as witnesses in all cases in equity, as well as at law, in which they should be parties, and in which the question of usury should be the matter in issue between them.

The act for the limitation of certain personal actions, applies in terms only to actions at law.  Digest of 1844, sec. 1.  So the act of James I. ch. 16, entitled " an act for limitation of actions and for avoiding suits at law," applies in terms only to suits at law ; and yet these statutes have always been held as binding in a Court of Chancery, as at law.

In *Hoveden vs. Lord Annesley*, (2 Sch. & Lefr. p. 329,) Lord Redesdale said, Courts of Equity are not within the words of the statutes, because the words apply only to particular legal remedies ; but they are within the spirit and meaning of the statutes, and have been always so considered.  See also *Bank of U. S. vs. Daniels*, (12 Peters, U. S. R. 56.)  *Kane vs. Bloodgood*, (7 Johnson, Ch. R. 90.  Angell on Limitations 25, 26, and cases cited.)

We think the statute of Rhode-Island on which this motion is founded, was intended to introduce a new rule of evidence in the class of cases to which it refers, and whether the cases are at law or in equity, the rule of evidence should be the same.

This is a Bill to redeem certain mortgages therein described, given by the plaintiff to the defendant, and the matter in issue between the parties has been, not the validity of the mortgages, but the amount due thereon.

Perhaps we cannot dispose of the questions which have been raised, in a more clear and expeditious manner, than by taking up each item of dispute separately, as each depends upon its own circumstances.

The defendant charges the plaintiff with the sum of $500, under the agreement of August 10, 1848. This is resisted by the plaintiff upon the ground of usury or of forfeiture. The clause of the contract under which this charge is made is as follows : " And in default of the payment of the said sum of $8,906 54, on or before the said first day of December, I agree to pay the further sum of $500, as stipulated damages, and agree that said damages shall be considered as part of the mortgage debt, &c."

This is clearly usurious. The defendant agreed to extend the time of payment to December 1, 1848, and the plaintiff under the agreement was entitled to that extension without paying anything more than legal interest. *Cutter vs. Howe,* (8 Mass. 257.) *Pollard vs. Bailey,* (6 Mumford, 432.)

But if at the end of the extension he did not pay, he was to pay the $500 for the default. We consider this in the nature of a penalty. The defendant's counsel claims it on the ground of stipulated damages, but there can be no stipulated damages for the non-payment of money except the legal interest. We think, therefore, this item should be rejected from the defendant's account.

The plaintiff also claims of the defendant the further sum of $500, which he says he has paid the defendant under the agreement of February 1st, 1849. By this the parties agreed that the sum of $9,883 95, including rent and interest to June 1st, 1849, was due on that day, (June 1, 1849,) and if that sum was paid on or before the 16th day of February, next ensuing, (deducting rent and interest after that time included in the above sum,) the $500 was to be taken as part payment of the same

debt.  But if the said sum was not paid on or before the
1st day of June, said payment of $500 was to be forfeit-
ed as agreed damages.  And if the plaintiff paid the de-
fendant in full at any time before the 1st day of June, a
proportionate part of the $500 was to be applied in part
payment of the debt, in proportion as such payment was
in anticipation of the 1st day of June.

The debt has not been paid, and the question is, is the
plaintiff entitled to have the whole or part, and if part,
what part of the $500 applied in payment of the debt.
If after the forfeiture had been incurred, the plaintiff had
voluntarily paid it, he would be entitled to no relief.
The Court would not interfere to compel a repayment,
although relief against the penalty would be granted if
it had not been paid.   It is very clear that no application
of the money was contemplated by the parties, until the
contingency on which the application was to be made
had happened; that contingency was the payment or
non-payment of the debt.  Until the contingency hap-
pened, the money in the hands of the defendant could
not be considered in the sense of the law as paid.   The
application of the money to the payment of the penalty
must be made by the creditor after the happening of the
contingency, on which his right to make the application
depended.

The law would not presume an application to the pay-
ment of a penalty.   Had the defendant a right to make
the application?   We think not, unless with the assent
of the plaintiff, given after the contingency had hap-
pened.   The plaintiff had a right to consider the penalty
as unpaid, and to be relieved against an act of appropria-
tion by the defendant, in the same manner as if the de-
fendant had sought to recover the penalty of the plaintiff.

This sum must be charged to the defendant in taking the account.

The plaintiff alleges the defendant has charged interest monthly in advance and compounded it. This is usurious. The privilege of taking interest in advance seems to be limited to discounts of commercial paper by Banks and Bankers in the course of business, and does not extend to a loan like the present. *Bank of Utica vs. Wager*, (2 Cowen, 712.) *Fletcher vs. Bank of United States*, (8 Wheaton, 838.) *Manhattan Company vs. Osgood*, (15 Johns. 168.) *March vs. Martindale*, (3 Bos. & Pule. 154.) *President, Directors and Company of Agricultural Bank vs. Russell*, (12 Pick. p. 586.)

But the defendant may charge the plaintiff interest at the end of every month, if such be the contract of the parties, and this, although the principal sum may not be due. Thus, a note payable in a year from date with interest at the end of each month, is good, and the monthly interest may be recovered at the end of each month. *Mowry vs. Bishop*, (5 Paige, 98.)

With regard to the notes of Smith Brown, we do not find sufficient evidence to annul the settlement thereof, which was made by the parties by the agreement of August 28, 1846.

The plaintiff claims for over charge of rent of the house on Westminster street. The rent is charged by the defendant at the rate of four hundred dollars per year. The plaintiff objects to this charge and says it is excessive, and a cover for usury. It is not enough for the plaintiff to prove the rent unreasonably high. It must be proved to be so much above the actual value, as taken in connection with the other facts, to furnish a presumption that it was resorted to as a cover for usury. We think

the evidence entirely fails to make out any such charge. The defendant was offered the same rent by another applicant for the house, but the plaintiff declined giving up possession. And in the agreement of February 1, 1848, the plaintiff agrees to surrender up possession on the first day of April ensuing, and Mr. Whitman guarantees the surrender ; showing the defendant was anxious that the plaintiff should vacate the house rather than keep it at the rent charged.

Decree, entered December 31st, 1850, that the complainants be allowed to redeem, upon the payment of the sum reported to be due by the Master, with interest, together with the amount paid by the respondents for the expense of advertising the sale at auction and with costs to the respondent to be taxed by the Clerk of this Court ; and in case of default of said complainants to pay said sums on or before the first of March next ensuing, he the said complainant, his heirs and assigns, to be foreclosed thereafter from any right to redeem the same. And it was further decreed, that the mortgage given by the complainant and his wife, of the wife's estate, be released and discharged, the amount secured thereon having been paid, by said Darius Sessons, in his application of the payment made by him of $4,250 on the 24th of February, 1847.

The complainant having claimed costs in the above suit, as the prevailing party, the Court held, that the respondents were entitled to costs, according to the general rule, which made the complainants liable for costs on a bill to redeem, where the question is not as to the right to redeem, but the amount due on the mortgage.