Denio, J.
There is no force in the objection that the Delaware Bank had not a right to transfer the note in question to the plaintiff. It was negotiable in its terms and according to the general rules of law; and the bank had the same right, which any other holder would have had, to transfer it to another by endorsement, or by delivery under a blank endorsement. Though this position is so plain that one would scarcely expect to find an authority in support of it, it nevertheless happens that it has been distinctly decided by the supreme court of the United States. (Planter's Bank v. Sharp, 6 How., 301, 302.)
The possession of negotiable paper is ordinarily prima facie evidence of ownership; but the plaintiff in this case went further, and gave affirmative proof that this note had been transferred to him by the bank. NTo objection was made to the parol evidence of the resolution of the board of directors, nor was the objection even taken that the transfer ought to have been authorized by a previous resolution of the board, according to the provisions of 1 R. S., 591, § 8. (See Eno v. Crooke, M. S., decided in this court, March Term, 1854.) It is unnecessary to decide whether strict proof of such a resolution would have been necessary if a proper objection had been taken, as that question was not raised.
The remaining questions relate to the defence of usury.
(1.) It is well settled that, upon the discounting of commercial paper not having a longer time to run to maturity than the notes and bills which are usually discounted by bankers, interest on the whole amount of principal agreed to be paid at maturity, not exceeding the legal rate, maybe taken in advance. It is obvious that in this way the lender, by investing the money thus retained, may realize more than at the legal rate of seven per centum per annum, and if the case were res nova, it would be difficult to sustain the practice. But we are not authorized to disregard the uniform, course of decisions which for along series of years. *228 have declared it to be legal. -The first case in which the question appears to have arisen in this state was The Manhattan Co. v. Osgood, decided in 1818. (15 John., 162.) One of the notes on "which the action was brought was for $6000, payable in ninety days, and'it had been discounted by the plaintiffs at the" rate of seven per cent. The defendant contended that‘it was usurious and void. But the court held that there was no-ground" for the objection, “ for,” they said, “ it cannot be -questioned but that it has been the uniform practice of all banking institutions since their establishment to exact the payment of interest in advance, and it would" be an alarming principle to introduce that all paper thus held should be usurious and void.” Certain English cases were referred to, which, with those from other states of the Union, and from the supreme court of the United States, are noticed in the opinion of Chief "Justice Savage, hereafter mentioned. At the May term of the supreme court, in the year 1824, three cases were decided, each of which involved this question. In The New-York Fire Insurance Co. v. Sturges (2 Cow., 664), the action was on a note for $1000 at’four months, which had been originally ' discounted by an insurance company, in payment of certain debts due to the company, and had been several times renewed, and on each occasion the full amount "of the interest for the time the note had to run, including three days of .grace, at seven per cent, was retained by the company and the balance, only, allowed to the "maker. • It was held that "there was no usury, the case of The Manhattan Co. v. Osgood being referred to as authority; and judgment "was given for the plaintiffs. " In the next case, "which was that of the same plaintiffs against Ely, the same question " was presented upon similar facts. Mr. Justice-Sutherland, in delivering his opinion, went "more at large "into the question and referred to the English" cases, and expressed his conclusions "in the following language: “ The principle to "be extracted from these cases, and from a variety of Others *229 which might be cited in confirmation of them, I hold to be this : That the taking of interest in advance is allowed for the benefit of trade, although, by allowing it, more than the legal interest is. in fact, taken; that being for the benefit of trade, the instrument discounted, or upon which the interest is taken in advance, must be such as will and usually does circulate or pass in the course of trade. It must,- therefore, be a negotiable instrument, and payable at no very distant day; for without these qualities it will not circulate in the course of trade. Under these limitations, the taldng of interest in advance, either by a bank or incorporated company without banldng powers, or an individual, is not usurious.” (Id., pp. 678, 704.) In this case, judgment was given for the defendant on other grounds. The other case was The Bank of Utica v. Wager (id., 712), where interest had, in like manner, been taken in advance, and where, moreover, it had been calculated by means of tables which, by treating ninety days as one-fourth part of a year, gave more than at the rate of seven per cent per annum. The defendant’s counsel were not permitted to argue that the note was usurious because interest instead of discount had been taken in advance. In the principal opinion, however, which was delivered by Savage, C. J., the learned judge goes fully into the question we are considering, examining all the cases in England and in this country, and declaring that the point may be considered as settled in favor of the legality of the practice, “ until the legislature shall alter it, if they should think it proper or necessary.” Judgment was, however, given in favor of the defendant, on account of the excess which was taken beyond seven per cent by the use of the tables referred to. This judgment was aifirmed by the court for the correction of errors. (8 Cow., 398.) The reporter states that the opinions proceeded upon different views, and that the vote was upon the question of affirmance or reversal generally. From this circumstance, it seems probable that some of the *230 members of the court of errors were of opinion that taking interest in advance rendered the paper usurious, but that is no evidence that such was the opinion of a majority of the court; and if there was nothing more it could not be said that the course of adjudication .in the supreme court had been at all shaken. But in October, 1829, the case of The Bank of Utica v. Phillips (3 Wend., 408) came before the supreme court, presenting the case of interest taken in advance upon the discounting of a note, and the defendant’s counsel took the ground that the rule had been changed by the court of errors in affirming the judgment in The Bank of Utica v. Wager. He was interrupted by the court, who said : “ We do not understand such to have been the decision of the court. There is nothing in the report of the case showing the opinion of the court upon this point. . We . held, when the case was before us, in conformity with the decision in the case of The Manhattan Co. v. Osgood, that the taking interest in advance by a banking institution on discounting a note is not usury, and the judgment given by this court is affirmed. What may have been said by one or two members of the court of errors, in delivering their opinion, is not necessarily the judgment of the court. When a point, solemnly and deliberately adjudged by this court, is said to be overruled, it must be clearly and unequivocally shown, or we will consider it our duty to adhere to what we conceive to be the settled law of the land.” Judgment was given for the plaintiff. The question was again raised, and I believe for the last time, in 1830, in The Utica Insurance Company v. Bloodgood (4 Wend., 652), where a distinction was attempted as to a creditor not having banking powers, but it was overruled upon the authorities of the two cases last referred to from the 2d Cowen.
I have been thus particular in collating the authorities, for the reason that the position which they establish is at variance with the natural reading of the statute, and because the practice referred to seems to stand altogether upon the *231 ground of judicial decision. It does not, however, in my opinion, stand less firmly than it would do if it had the sanction of legislative authority. I disclaim, altogether, any right in this court to overturn a principle which has been established and uniformly acted upon for nearly forty years, and during that time has frequently been reaffirmed by our principal court of original jurisdiction, though it should happen not to have been adjudged by the court of ultimate appeal. I am persuaded that a contrary practice would produce the utmost uncertainty and confusion. As was remarked by Chief Justice Savage, the legislature, should it see cause, could change the rule as to future cases; and it is worthy of attention that, at the time of the general revision of the statutes in 1830, the rule was well established, and had then, very recently, been acted on in the cases reported in Cowen’s Reports. It is not unreasonable to suppose that it would have been changed on that occasion had it been thought expedient to do so.
(2.) The error in calculation, by which an excess of less than two dollars was included in one of the notes, does not make the contract usurious. To constitute usury, there must be an illegal agreement, and this cannot be predicated of a case in which the excess was the result of accident or inadvertence, without any knowledge that more than seven per cent was secured by the contract. This has been repeatedly decided. (See the English cases referred to in Comyn on Usury, p. 16 and seq.; The N. Y. Fireman's Ins. Co. v. Sturges, supra)
(3.) The exacting of a premium of exchange on the drafts, with which the proceeds of the discounted paper were paid, presents a question of more difficulty, I think, than either of the other points. Some of the protested paper, which formed the consideration of note sued on, was payable in terms in the city of New-York; and the evidence tended to show that portions of the proceeds of such paper were paid in drafts on New-York, upon which a premium *232 of exchange was' charged and allowed. Now, if the contract' of the maker or acceptor of this paper had-beer», performed according'to its- terms, the bank would, at mate rity, have received payment at the -same' place at'which its' drafts were payable, ‘and- consequently of the same value; and, having received' the interest for the whole period of credit, it would, in this way, secure' the amount' of the premium, of exchange in addition to the legal'interest. Independently of the'fact that' the - bank was to be ultimately' reimbursed in the - same species of-funds which it had advanced, there is no- objection upon principle to-its receiving the difference of exchange upon-the drafts which it' gave the borrower instead of' its own' circulating notes. It had a-legal right to, loan its own'notes ; but if' the borrower elected to take funds more'valuable because they were on deposit at a different place, it was quite right that he should pay this difference in value. The case of The Cayuga County Bank v. Hunt (2 Hill, 635) is-precisely in point' to sustain the legality of' such a transaction. Indeed, the merits of- that case presented the same question, in all'respects, as the one now under consideration. The action was against the endorser of an accepted'bill of= exchange, upon-a protest for non-payment. The acceptors, a-, the time of acceptance, and also when the bill matured, resided- and liad their place of business in New-York,and upon settled' principles the bill was payable there. (Chitty on Bills, 172, Springfield ed., 1839; Woodworth v. The Bank of America, 19 John., 392, 408.) The case, therefore, presented the same feature which occasions the doubt entertained in this case"; and yet-,- the bill was held not- to be usurious. It is true, the court overlooked- the principle which- holds that the place of payment was that of the residence of the acceptors, and considered' the bill- payable in Auburn where-the bank was, situated: They, however, correctly say that the question of usury does not depend, in cases of this kind, upon accidental circumstances.. At the time the- *233 paper in question was discounted by the Delaware Bank, the difference of exchange was against Delaware county. How it would be when the discounted paper should mature, the parties could not certainly know, though, from our knowledge of the course of trade, we may suppose that but little doubt could be entertained upon that point. Still, no one could' legally know that the funds in New-York would then be worth more than at Delhi. Again, suppose the discounted paper had been payable at Delhi: in that case the law would be plain, that the payment of the proceeds in drafts charging the premium would not be usury. But the creditor would not have been obliged to receive country money when the paper became payable. He might have insisted upon the debt- being paid in specie; or, in default of that, in funds current in New-York, though the practice, no doubt, is to take such money as is current in the locality. These considerations have led me to the conclusion that the transaction was not usurious on account of the payment of this premium of exchange. We do not intend to say what the law would be in a case where the lender should make it a condition of the loan that the borrower should make his paper payable in KewYork, and should, upon the discount of such paper, insist upon paying the proceeds in drafts, charging a premium of exchange. There is no evidence that such a condition was insisted upon in respect to this paper. Being satisfied that the case is entirely clear upon the other points, and that the circumstances mentioned do not establish usury, I am in favor of affirming the judgment of the supreme court.
Crippen, J.
I am unable to discover any legal ground for holding that the bank could not transfer the note to the plaintiff. It was due and unpaid; it was the property of the bank ; if a third person desired the note transferred to him, either for the purpose of collecting the money on it or for any other legal object, the bank, on receiving the *234 money or other payment therefor, might transfer the same to such person. I am not aware of any statute or adjudged case prohibiting such transfer by the bank. (Sec 6 Howard U. S. R., 301.)
The next point made by the defendants’ counsel is, that the note was usurious and therefore void. The case shows that the note in suit was given on the settlement and consolidation of several other notes, held by the bank against the defendants, then due and under protest. These several notes had been discounted at the Delaware Bank for the benefit of Stewart & Frazier, who were doing business in the city of New-York. Most of the notes, not all, were made payable at the American Exchange Bank in the city of New-York. The Delaware Bank gave drafts on its correspondent in the city for a portion of the avails of the notes at the time of making the discounts, and charged one-half of one percent on Such drafts, for the difference of exchange in favor of the city. The defendants allege in their answer that it was made a condition by the Delaware Bank to the discounting of the notes for Stewart, that they were to- be made payable at a city bank, and that Stewart should receive the avails, in drafts of. the Delaware Bank on some bank in the city, at one-half of one per cent premium thereon. The testimony of H. D. Gould, with whom it is alleged such .arrangement was made, and who, at the time, was the financial officer of the Delaware Bank and discounted the several notes, made the settlement, and took the note on which the action is brought, disproves any such arrangement. He was examined as a witness, and expressly testified that no condition was imposed on the part of the bank; on the contrary, he says that the drafts on New-York were made at the request of Stewart, and for his accommodation; that the premium charged was less, by one-fourth of one per cent, than the usual rate of premium charged by the Delaware Bank during the year 1848. The testimony of Gould is uncontradicted in any material part by the evi *235 dence given by Stewart, one of the defendants. It was attempted to be shown-by him that the allegation in the answer, relating to the condition on which the Delaware Bank made the several discounts for him, were true. His testimony, however, falls short of making out the truth of the allegation; and when all taken together, it does not materially vary the facts from the relation of them as given by Mr. Gould. The weight of testimony, if it could have any bearing upon the case here, is very strongly in favor of showing that the drafts given by the Delaware Bank on the city, were thus given at the request and for the accommodation of Stewart. The drafts would command city .funds at par. The difference of exchange in favor of the city, over the Delaware Bank funds, was at least -one-half of one per cent, so that nothing was lost by Stewart in taking drafts instead of Delaware Bank bills.
Another ground relied upon and urged by the defendants’ counsel to establish the defence of usury is, that interest at seven per cent was computed and charged by the bank on the amount of each of the notes, instead of charging interest on the sum actually loaned. The case shows that the interest was computed on each note from its date, or from the time it was presented, to the time it fell due, including three days’ grace', and deducted from the amount of the note, or paid in money by the person obtaining the discount.
It has long been decided in this state that it was not usurious or unlawful to take the interest out in advance, without regard to the rules of rebate or discount. This rule has been long established, and the banks have acted upon it as the settled law. I have seen no good reason for establishing a, new theory or rule upon this subject. The following authorities show how the question has been decided in this state. (Manhattan Bank v. Osgood, 15 John., 168; Bank of Utica v. Wager, 2 Cowen, 712; New *236 -York Fire Insurance Co. v. Ely, 2 Cowen, 678; the same v. Sturges, 2 Cowen, 664;, Utica Insurance Co. v. Bloodgood, 4 Wendell, 652; 3 Wendell, 408.) A mistake in the compu-?.tation of interest will, not make the loan usurious. The mistake, in, this case, is shown by the testimony of Mr. Gould to have arisen from inadvertence, and not from design. In order, to establish usury, a corrupt agreement must be shown to exist. No.such agreement was.made out by the testimony in this case.
My conclusion is that the judgment should;be affirmed.
All the judges, except Dean, J., who thought that the case should have been submitted to the jury, concurred.
Judgment affirmed.