Cowart *v.* Perrine.

---

## COWART *vs.* PERRINE.

21 101
62 694

1. Upon replication filed to a plea that there was no promise within six years, an agreement not to take advantage of the statute of limitations, cannot be given in evidence ; it is not within the issue. The only question is, whether there was any promise within six years

2. The old practice would have allowed a rejoinder, that the defendants had agreed not to plead the statute. Now, a rejoinder is not allowed, but the promise should be alleged in the bill, and if omitted by inadvertence, the complainant would be allowed to amend.

3. A promise not to take advantage of the statute, made pending a negotiation for allowing further time to arbitrators to report, will not be construed to be an agreement never to take advantage of the statute, but to be an agreement that the statute should not run while the arbitration was pending. After that was revoked and at an end, the statute would begin to run.

4. The ruling in this case in 3 *C. E. Green* 454, that a submission to arbitration does not prevent the running of the statute of limitations, is not affected by the fact, that pending the submission, the right to sue was suspended.

---

This was a bill for account, by one of two former partners against the other. The defendant pleaded no promise within six years, and that no cause of action had arisen within six years ; to this plea the complainant filed the common replication. The argument was had upon the pleadings and testimony taken upon both sides.

*Mr. W. H. Vredenburgh* and *Mr. J. Parker,* for complainant.

*Mr. G. D. W. Vroom* and *Mr. P. D. Vroom,* for defendant.

THE CHANCELLOR.

The bill sets forth a submission of any disputes that might arise in settling up the partnership affairs, to two arbitrators actually chosen, contained in the agreement for dissolution, executed March 5th, 1853. On the motion heretofore made to strike out the plea, it was held that a mere submission to arbitrators of matters upon which the arbitrators never acted, would not prevent the running of the statute of limitations during the continuance of the submission. 3 *C. E. Green* 454. This position is not affected by the point now urged, that the submission while it continued, suspended the right of action, upon the authority of the decisions in *Scott* v. *Avery*, in the House of Lords, 36 *Eng. L. & E.* 1, and of the Court of Queen's Bench, in *Russell* v. *Pellegrini*, 38 *Eng. L. & E.* 99.

In *Dekay* v. *Darrah's Admr's*, 2 *Green* 288, the Supreme Court of this state held, that the suspension of the right to sue an administrator for six months after the death of the intestate, did not prevent the running of the statute for that time. Nothing is shown that amounts to, or that could be construed into, a new promise, or an acknowledgment of a continuance of the indebtedness, or that the account was unsettled after the meeting in the court-house in 1860, which was more than seven years before the commencement of this suit. The last communication had by the defendant with any one, was in June, 1861, more than six years before the suit was commenced, and that was to say that he considered the whole matter as settled and finished.

It is urged that the defendant, in February, 1859, agreed that he would not take advantage of the statute of limitations; and therefore, that he should not be permitted to set up this plea. In the first place, that cannot be set up on this issue, which is simply whether any promise was made, or cause of action arose, within six years before the filing of the bill. That was the question decided in *Gaylord*

v. *Van Loan*, 15 *Wend.* 308, on a replication of a new promise, to a plea of the statute of limitations.

This question would have been properly raised on the motion to strike out the plea, but no such agreement is set out in the bill, and therefore it was not considered. It could have been raised by amending the bill in this respect. Under the old practice, this could have been effected by a special replication; this practice is now entirely abandoned, and the object obtained by amending the bill, and setting out such bar to any such defence, by way of anticipation.

In this case leave would not have been granted to amend if applied for in time, upon such promise as is shown by the evidence.

It has been held that a defendant who has agreed not to set up the statute of limitations, shall not be allowed to do it; that such agreement, although it does not amount to a new promise, will operate by way of estoppel, in cases where the statute had not fully run, and the plaintiff forbore to sue in consequence of the promise. *Randon* v. *Toby*, 11 *How.* 493; *Utica Ins. Co.* v. *Bloodgood*, 4 *Wend.* 652; *Gaylord* v. *Van Loan*, *supra.*

In the first two cases there were express promises to pay the debt within the limited time, sufficient to maintain the actions, and the promises were in writing; and in the last the decision was not on that ground, though the dicta in the opinion support the principle of estoppel. To suspend the operation of a positive statute on a verbal agreement, by the doctrine of estoppel, seems to me a very dangerous application of it. I would hesitate to hold that a verbal bargain for the sale of land was binding, because the vendor said at the time, my word is as good as my bond; I will not set up the statute of frauds; and thus induced the purchaser to waive a written contract of sale.

But admitting that a parol agreement not to set up the statute of limitations, would, by estoppel, prevent the plea from being set up, yet the agreement shown in this case, is

not sufficient to estop the defendant from setting it up in this suit.

He was asked to sign a written stipulation not to set up the statute of limitations, in February, 1859, when the statute had nearly run; he declined to sign it, because he wanted this matter to be brought to an end, and was not willing to postpone it indefinitely; such is the testimony of the complainant's witness. The defendant denies any agreement for that purpose. Taking this testimony of complainant's witness as true, it would be inequitable to give it the effect which the defendant said he was not willing it should have, and leave the matter open forever. The bar would be as good at the end of fifty years as it is now. It was evidently only intended to operate while the matter was in position to be brought before the arbitrators, and for a reasonable time afterwards. As long as this agreement really caused the complainant to delay a suit, it would come within the reasons on which an estoppel *in pais* is founded. When the act or promise of one man causes another to do, or forbear to do, something which he would otherwise have done, the other is estopped from taking advantage of the act or omission, caused by his own act or promise. In this case the defendant refused to meet, or go on with the settlement after March, 1860, and in June, 1861, expressly told the arbitrator to whom he had made the promise, that the matter was at an end. It is impossible to believe that the delay to bring suit after this, was occasioned by the promise not to set up the statute.

It would be most inequitable to give a promise made under the circumstances of this, the effect of keeping these accounts open indefinitely. I should be unwilling, under any circumstances, to extend such a promise by parol longer than six years from the making of it. For these reasons, had the application to amend been made at the proper time, I would have felt constrained to have refused it.

The bill must be dismissed.