NEW-YORK,
May, 1817.

BRISTOL
v.
BARKER.

The defendant in error brought an action in the court below, to recover the value of a pair of oxen, which had belonged to one *Ward*, and were taken by *Taggart*, one of the defendants below, who was a constable, under an execution issued in favour of the other defendants below, against *Ward*. The plaintiff below produced at the trial one *Matilda Marshal*, and offered to prove by her, that she heard the plaintiff converse with *Ward* about the cattle, and that it was agreed between them, that *Ward* had, previously to that day, sold the cattle to the plaintiff, but she was not present at the time the contract was made. The defendants below objected to the testimony, but the court permitted it to go to the jury, and a verdict was found for the plaintiff below. The defendants below tendered a bill of exceptions, which was removed into this court by writ of error.

The case was submitted to the court without argument.

——◗ ❊ ◖——

BRISTOL *against* BARKER.

THIS was an action brought to recover the penalty given by the second section of the act of the 6th *April*, 1813, entitled, *An act to prevent the passing and receiving of bank notes less than*

The *act to restrain unincorporated banking associations,* (2 R. B 234.) extends only to companies formed for banking purposes, and not to an individual who carries on banking operations alone, and on his own credit and account.

NEW-YORK, *the nominal value of one dollar, and to restrain unincorporated*
May, 1817. *banking associations.* The cause was tried before his honour
BRISTOL the chief justice, at the *New-York* sittings, in *April,* 1816.
v.
BARKER. At the trial, *Walter Morton,* cashier of the *Exchange Bank,* in
the city of *New-York,* was examined as a witness on the part of
the plaintiff, who testified, that in the month of *April,* 1815, *Ja-
cob Barker,* the defendant, established a banking house in the
first ward of the city of *New-York,* which was denominated the
*Exchange Bank :* that the defendant has, since the establish-
ment of the bank, issued notes in his own name, and has recei-
ved deposits and made discounts in the manner usually done by
incorporated banks, and that he carried on the business of a
private banker, on his individual account and responsibility, un-
der the name and style of the *Exchange Bank.* The plaintiff
having rested his cause, the defendant moved for a nonsuit,
which was granted.

The plaintiff now moved to set aside the nonsuit, and the case
was submitted to the court without argument.

THOMPSON, Ch. J., delivered the opinion of the court. The
only question in this case is, whether the act to restrain unincor-
porated associations, (2 *N. R. L.* 234.) applies to an indivi-
dual, who may alone, and on his own credit and account, carry
on banking operations. The act declares, that no person un-
authorized by law, shall subscribe to, or become a member of,
any association, institution, or company, or proprietor of any
bank or fund, for the purpose of issuing notes, &c., or transact-
ing the usual business of incorporated banks ; and any person,
unauthorized by law, as aforesaid, who shall subscribe, or be-
come a member or proprietor, as aforesaid, shall forfeit one
thousand dollars.

It ought, in the first place to be observed, that this is a penal
act, and, therefore, to be construed strictly. It is very evident,
from the structure of the whole clause in the act, that it was in-
tended to extend only to associations, or companies formed for
banking purposes. This construction comports with the title of
the act, which, although no part of the statute, shows, in some
measure, the intention of the legislature. No difficulty arises in
giving force and effect to all the words used in the act, and still
confine their application to companies or associations, except
as to the word *proprietor,* in regard to which, there appears,

at first view, to be some little difficulty. But taking the whole section together, this word may be satisfied, by considering it used as synonymous with the word *member;* and the clause may be read and understood, as declaring, that no person, unauthorized by law, shall become a member or proprietor, with others, of any bank or fund, &c. This construction is much strengthened by the last clause in the section, which declares, that all notes and securities, &c. made, or given to any *such association, institution,* or *company,* not authorized as aforesaid, shall be null and void. The word *proprietor* is here not used. If the prohibition had been intended to extend to individuals, this clause would doubtless also have made void all notes given to any *proprietor* of any bank or fund. We are accordingly of opinion, that the motion to set aside the nonsuit, must be denied.

Motion denied.