N. Y. Firemen
Insurance Co.
v.
Sturges.

# THE NEW YORK FIREMEN INSURANCE COMPANY *against* STURGES.

Discounting a note at 7 per cent and taking the interest in advance, is not usury, either in bankers or others.

A corporation having no power, by the act of incorporation, to discount notes but created for the purposes of insurance, has no right to carry on the business of discounting.

ASSUMPSIT, against the second endorser of a promissory note, drawn by Peters & Harrison, in favor of Thomas C. Butler, jun. and endorsed by him and the defendant. The note was dated the 11th of January, 1819, payable four months after date, for 1000 dollars,

The cause was tried before his honor AMBROSE SPENCER, late Chief Justice, at the Sittings in New York, June 7th, 1821.

William M'Neil, a witness on the part of the plaintiffs, proved the hand-writing of the drawers, and of both the endorsers. David Codwise, another witness for the plaintiffs, proved demand of payment from the drawers, on the 14th of May 1819, and notice of non-payment to the endor-

A corporation has no powers except such as are specially granted, and those that are necessary to carry into effect the powers so granted.

The New York Firemen Insurance Company was incorporated, for the purposes of insurance, in 1810, and in 1818 an act was passed continuing that company till 1823, for the purpose of closing and winding up their business. On the 30th of August, 1817, O. & H. owed several debts to the company, and B. owed another, for which several debts they took of B. a note made by P. & H. payable at 4 months from the said 30th of August. These debts were all due for premiums of insurance. The company made a calculation upon the note, deducting $23 92, interest for the 4 months, at 7 per cent, then deducted the debts, and paid the balance, which was $20, to B. When this note became due, P. & H. offered a new note in renewal, also at 4 months, which the company took, deducting as before $23 92, for the interest, and giving their check to P. & H. for the balance, and the old note was taken up. The second note was renewed in like manner for P. & H. from 4 months to 4 months, till Jan. 11th, 1819, when the last note was given. The discount taken was the fraction of a cent more than the interest would amount to for the 4 months, including the 3 days of grace. *Held,* that the company had a right to continue a debt, originally lawful, in this manner; that the last note was, therefore, valid; and that it was not usurious, though the interest was taken in advance, with such a trifle beyond the interest; nor is such a transaction forbidden by the act to restrain unincorporated banking associations. (1 R. L. 234.) It cannot properly be called the *the business of discounting,* which, *it seems,* was alone intended by the words, *"making discounts,"* in the restraining act.

A debt due to an incorporated company will be presumed to have been contracted in the lawful course of business, until the contrary is shown.

Where a trifling excess is taken, on discounting a note, beyond the legal interest, it will be presumed to be by mistake, and not by the adoption of an erroneous rule of calculation, until the latter is shown.

Taking beyond the legal interest, by mistake, is not usurious;

Though, *it seems,* it would be otherwise, where the excess arises from the voluntary adoption of an erroneous rule of calculation.

NEW YORK,
May, 1824.

N. Y. Firemen
Insurance Co
v.
Sturges.

sers, on the following day. The note was then read by the plaintiffs. William McNeil, being cross-examined by the counsel for the defendant, further testified, that he was now, and had been since the year 1810, secretary of the company ; that the note was offered by and discounted for Peters & Harrison, and a check for the amount, deducting 23 dollars and 92 cents for the discount, given to them therefor, to enable them to take up their note of a similar amount, which fell due that day, and of which the plaintiffs were the holders; that on the 30th of August, 1817, the plaintiffs were the holders of certain promissory notes, drawn by Ogden & Harrison, and endorsed by Thomas C. Butler, amounting to about 500 dollars for premiums of insurance; which notes were, at that time, lying over due and unpaid ; that at the same time Thomas C. Butler was indebted to the plaintiffs in another sum of upwards of 400 dollars, (the precise amount the witness could not tell,) and that on the said 30th of August, he offered a note drawn by Peters & Harrison, to the plaintiffs, for 1000 dollars, for discount, the proceeds to be applied in payment of the notes of Ogden & Harrison, which note was payable at 4 months from the said 30th of August ; that the plaintiffs, thereupon, made a calculation upon the note, and deducted therefrom, in the first place, 23 dollars and 92 cents, being the interest for the four months the note had to run, calculated at the rate of 7 per centum per annum ; they then deducted the amount of the notes of Ogden & Harrison, and of the debt of Thomas C. Butler, and paid to Butler the balance of the note in money, which balance amounted to somewhere about 20 dollars. He further stated, that when the note, dated the 30th of August, fell due, Peters & Harrison, the drawers, declared that it was inconvenient for them to pay it, and offered a new note in renewal of it, also at 4 months. This new note was then taken by the plaintiffs, who deducted from the face of it 23 dollars and 92 cents, for the interest, and then gave their check upon the bank for the balance, with which Peters & Harrison went to the bank and took up the old note. He further said, that the last note was renewed in like manner, for Peters & Harrison, at the expiration of every 4 months,

NEW YORK,
May, 1824.

N. Y. Firemen
Insurance Co.
v.
Sturges.

until the note in question in this cause, which was received by the company from Peters & Harrison, in renewal of a note for the same amount ; and that after deducting 23 dollars and 92 cents, for interest, a check was given to them for the balance, to enable them to take up the former note, and the new note was retained by the plaintiffs.

Upon this testimony, the jury found a verdict for the plaintiffs, for 1156 dollars and 71 cents damages, and 6 cents costs, subject to the opinion of the Supreme Court upon the case.

The cause was argued at May term, 1823, by *D. B. Ogden & S. Jones*, for the plaintiffs, and (the late) *J. Wells & T. A. Emmet*, for the defendant.

*Ogden*, for the plaintiffs. 1. The original note was not drawn for the purpose of being discounted, but in payment of a debt due to the company, who, I admit, had no power to discount notes by the act of incorporation. But they have, like any other individual, the right to receive notes in payment or security of debts, and in such case to deduct the usual discount. By the act of 1818,(*a*) the original company were dissolved, and a new one created, who were constituted trustees to collect the debts of the old company, among which this was one ; and had not these trustees a right, in discharging this duty, to take security and extend the credit, deducting the discount ? The 3d section declares that they may do all matters and things relating to the objects for which they were instituted.

They are found, by this act, with a note in their hands belonging to their *cestuy que trusts*. Being applied to for an extension of credit, they accede to the proposition, and, as payment, take another note at 4 months, deducting the usual discount. This was not discounting by way of business, but was collateral or incidental to the note which the company had before taken in the lawful and regular line of their employment. *The People v. The Utica Insurance Company*,(*b*) and *The Utica Insurance Company v. Scott*,(*c*) do not, therefore, apply. In the first it was decided, on information in nature of a *quo warranto*, that they had no power to carry on

(*a*( Laws. sess 41, ch. 16.

(*b*) 15 John. 358.

(*c*) 19 Id. 1.

discounting as matter of business·; and in the second they failed in an attempt to enforce a note which had been taken in the course of their unauthorized banking operations. These cases were founded on the restraining act,(d) which was levelled against the exercise of banking powers. The 2d section (which he read) speaks of " any association, &c., for the purpose of issuing notes, receiving deposits, making discounts, or transacting any other business which incorporated banks may or do transact by virtue of their respective acts of incorporation." This is not the case of the plaintiffs. The act is cautiously worded, and the legislature never intended any restraint beyond what they clearly and fully expressed. The construction contended for would restrain every commercial house in the city of New York, consisting of more than one member, from securing their debts by discounting notes offered in security. We rely on the *Utica Insurance Company* v. *Scott*, as clearly supporting this distinction.

NEW YORK, May, 1824.

N. Y. Firemen Insurance Co v. Sturges.

(d) 2 R. L 234.

2. Seven per cent. per annum was deducted for the time which the note had to run ; and we shall be told that this was usurious. If so, it was either because the interest was deducted beforehand, or three days too much were included in the computation. *The President and Directors of the Manhattan Company* v. *Osgood*,(e) answers the first objection, unless there is a distinction between bankers and others. The principle is the same as to all. The statute of usury does not mean one thing as to merchants, and another as to bankers ; and this Court will not listen to evidence of custom in order to sanction usury.

(e) 15 John 162, 168.

As to the second objection, if any, in fact, it arises from a mere mistake in the amount of time. Both parties intended 7 per cent. The calculation proceeded by aliquot parts of the year ; and the error intervened by treating three days as the 10th of a month, by which about three-fourths of a cent was lost to the debtor ; and if there ever was a case in which the maxim *de minimis non curat lex* applied, it does so here. A mere mistake in calculation was never holden to be usury. There must be a corrupt agreement.

NEW YORK,      But here is no mistake. The statute speaks of years, &c.,
May, 1824.   and the uniform custom has been to compute days as the
N. Y. Firemen  30th part of a month. This is for the convenience of com-
Insurance Co.  mercial business.
     v.
Sturges.

     *J. Wells,* contra. 1. Independent of the restraining act,
these plaintiffs had no power to become parties to the note.
They are a body corporate; and have no rights except what
are specifically conferred by statute—not like physical and
moral agents, capable of performing every thing except what
is denied to them by prohibitory laws. They are the crea-
ture of the legislature, who have delegated to them an au-
thority whi·h, when they transcend, their acts are not merely
unauthorized as to them, and valid as to others, but illegal
and void to every intent and purpose. The object of their
creation appears by the act, (sess. 33, ch. 20, March 2d,
1810.) It is insurance, and nothing more. Indeed, it is
admitted, that they have no power to employ funds in dis-
counting notes, as the business of the institution; but we deny
the qualification contended for. It makes no difference what
their notions may be, or the purpose for which they are as-
sociated; nor whether they depart from their powers gene-
rally, or only in particular instances. Here is no latitude for
a constructive extension of powers. " An incorporated com-
pany have no rights except such as are specifically granted,
and those that are necessary to carry into effect the powers so
*(f)* 15 John. granted."*(f)* The power of discounting is not necessary
383, per to carry their powers into effect. They may receive notes
Thompson, C. for premiums; because this is in the course of their busi-
J. ness; but the right to make these notes the basis of a long
course of speculation, by way of discount, is not incidental,
because it is wholly unnecessary. No matter, therefore,
what may be the origin of the debt due; it is plain, from
the case, that the note in question was offered for the pur-
pose of *discount*, and accepted in this view. The manifest
operation is a *discount* for prompt payment. It is the same
thing precisely as if money had been paid *minus*, the dis-
count, thus indirectly converting their money into a fund for
the purpose of a speculation, which the law had prohibited
as to them. To mark the transaction still stronger, after

paying the antecedent debt, the balance is advanced in money. To have saved appearances entirely, the note should have been for the precise debt. The balance, at least, was a mere loan. This operation is carried on from the 30th . f August, 1817, to the 11th of January, 1819, and assumes the complete character of a discount transaction. The only excuse is, that the drawers were all along unable to pay. But this is a mere pretence, unsupported by proof.

Again : suppose the old company had this power of incidental discount ; and that they might have kept this note on foot by these renewals from time to time ; the new company had no such authority. The corporation was kept alive by the act of February, 1818, for the mere purposes of collecting in the debts and closing the concerns of the old company. Had there been a single act of enlargement by the old company, it might have been valid ; but even this power is divested by the late act. It is the duty of the new company not to give time, but collect in the most speedy manner. This question upon the powers of corporations to go beyond the purposes of their creation in issuing notes, &c., has been much examined in two late English cases—*Broughton and others* v. *The Company, &c. of the Manchester and Salford Water Works,(g)* in the King's Bench, and *Slark* v. *High-Gate Arch Way Company,(h)* in the Common Pleas. The defendants in each, a corporation for specific purposes, had accepted bills of exchange, and the question was upon their power to do this, and if they had power, whether the bills were not void by the English restraining act, made in protection of the Bank of England. In the first case, two of the Judges adverted distinctly to the powers of the corporation, and held the bill void, because it was foreign to the purposes for which the company was created, (and he read from their opinions on this point, 1 B. & A. 8, per Bayley, J. and id. 11, per Best, J.)

[WOODWORTH, J. I do not understand the plaintiffs' counsel as contending for the general power of discount. Most clearly that cannot be sustained.]

*Margin notes:*

NEW YORK. May, 1824.

N. Y. Firemen Insurance Co. v. Sturges.

(g) 3 B. & A. 1.
(h) 5 Taunt 792.

NEW YORK,     *Wells.* The case of the *Utica Insurance Company* v.
May. 1824.    *Scott,* was a much stronger case for the plaintiffs than the
N. Y. Firemen present.    What possible difference is there from a mere
Insurance Co. bank discount ?   In substance it will be found the same.
v.
Sturges.

2. The note is void within the restraining act.  This posi
tion was also examined in the *Utica Insurance Company* v.
*Scott.*   There, as here, the funds of the company were ap-
plied to the discount of notes.    The argument on the other
side would authorize any and every corporate body to dis-
count, without regard to the original object of the institution.
It is not necessary, in order to bring them within the opera-
tion of the restraining statute, that the company should issue
bills.  The act is in the alternative.   They are not to asso-
ciate for the purpose of *issuing notes* or *receiving deposits,*
or *making discounts.*  The going contrary to either alterna-
tive will work the same effect as a total violation.   The ob-
ject was to prevent the use of moneyed capital, in all the va-
rious modes which the banks had adopted.   Nothing short
of this could completely protect the charters of these com-
panies, many of whom had paid heavy considerations for
their franchise.  Here, we find money employed in one of
the essential operations of banking.

Nor would the action lie upon the money counts, as was
hinted in the *Utica Insurance Company* v. *Scott.*   It is
brought against the endorser.

Our reasoning will not, as supposed, operate in restraint
(*i*)   *Bristol* of individuals, though carried on openly and avowedly.(*i*)
v. *Barker*, 14
John.    Rep.
205.          *T. A. Emmet,* (same side.)  The intention of the restrain-
ing statute is to deny all excuse for discounting, whether gen-
erally or in particular instances, and does not apply itself to
the intent with which the act is done.  If the company dis-
count at all, they have a *fund* for the purpose, within the 2d
section.  Otherwise, what number of discounts shall settle the
point—ten, twenty, thirty, or what other number ?   The in-
tention is to restrain banking operations to bodies incorpo-
rated for that purpose ; and no shift or evasion should be re-

ceived to justify an act of violation, however innocent the intention.

But this transaction was not a mere extension of credit. The note is entirely distinct, and disconnected with the premium consideration. The parties are different—the amount more. It is not the continuation of a debt. The original premium note is set off, and the balance paid, thus performing a distinct banking operation, and usurping the franchise of incorporated companies. This is not an incidental power ; for if so, why does the 3d section of the act of 1818, prescribe the mode of taking security ? It is to be by bottomry, respondentia, or mortgage of real estate or chattels real, &c.— not by notes or bills. Were not the powers to loan on mortgage equally incidental ? It is plain, therefore, that an incorporated company has not the same powers, even in relation to securing debts, as an individual. This was ruled in the *Utica Insurance Company* v. *Scott* and is abundantly settled in the English cases cited by my associate. A corporation have a right to sue, and to secure their debts in the particular manner pointed out by the act, but in no other. They cannot, even in this respect, exercise under their general powers the same rights as a natural person.

Here are several acts of discounting. For the purpose of deposits, they use another bank, on which a check is given, in order to pay the balance. They thus derive all the substantial benefits of deposit as well as discount. Had the old company pursued this course, would it not have been pronounced a plain evasion of the law ? Would they have been allowed to call it a benevolent extension of credit to an individual, or for the plain purpose of profit to themselves ? We have seen that the plaintiffs are still farther restrained. They are made trustees, and are limited to a discharge of their trusts in a particular manner, and are restrained in terms, by the 3d section, from the exercise of banking powers. In discounting, therefore, they have not only violated their duty as trustees, but transcended their powers as corporators.

*S. Jones*, in reply. I shall void a discussion of the powers of this corporation, so much talked of on the other side,

to carry on the business of discount, because they can have no application to the case. The corporation not only ceased to exist a number of years since, but here was no act resembling a discount, properly so called. Two debts were due on notes, to the old company, for premiums of insurance. Butler was also indebted to the plaintiffs in another sum of about 400 dollars, which, by legal intendment, was properly contracted. The notes lay over and were past due. The debtors applied to the plaintiffs and offered a note of $1000, covering all the demands, and asked them to take it, and pay back the balance: they comply, and this latter act is relied on as vitiating the transaction. But what were they to do? The debts are bad; the original notes are protested; there is no previous agreement that the $1000 note should be procured in the market for the purpose of discount. A rejection might have resulted in a loss of the debts. The witness' calling this transaction a discount, does not make it so. The note was taken expressly in payment, and to condemn it on this ground, would be a sacrifice of sense to sound. The note was continued down in the same way, by the trustees, under the new act. The argument on the other side presupposes a state of facts and a course of conduct which does not exist. If the origin of the debt was fair, and the note valid, could not the trustees receive payment, or, what is the same thing, a new note as a substitute? The original note being due, in conscience, if paid, could never be recovered back, and it is conceded to us, that the original debt may be due, though it is contended that the note is void and the endorser not liable.

It is said that a corporation can exercise no powers, except those expressly delegated or necessarily incidental: Granted. Here is an insurance company having funds. Now is there no way of employing these funds, by investing and making them yield a profit? and as incidental to that right, may they not be invested in any way not prohibited by the statute? It does not follow, that because the statute authorizes an investment in mortgages, respondentia bonds, stock, &c., that this delegation of power precludes the exercise of all others. This clause is in the shape of a limita-

NEW YORK,
May, 1824.

N. Y. Firemen
Insurance Co
v.
Sturges.

tion ; not for the purpose of conferring power. Without it, the company might have swelled their real estate to a dangerous extent. Accordingly, the 3d section goes on conferring certain rights, but provides, in the last clause, that the company shall not exercise banking powers. These clauses imply, that without the specific restriction, their rights would have been much more extensive. Suppose, then, the company, instead of taking mortgages, had invested all their funds in notes, renewing them from time to time, as they have done here ; would this have been to violate the object of the institution? The securities should be such as to enable the company often and suddenly to command their funds. They are liable to great and unexpected losses. Such a company ought always to have their funds forthcoming at three ar four months; and there is no way so effectual for this purpose, as an investment in notes, which always rank next to money. This transaction was a mere continuance of such an investment. Besides, the principle contended for on the other side, would drive the company to a course of prosecutions and judgments, instead of taking securities, unless the power to secure their debts should be expressly conferred by the charter of incorporation. Such a clause was, I believe, never thought of.

As to the language of the restraining act; when we define general terms used in a statute, we must be careful not to make our definition too extensive. That of *banking powers*, used in this statute, if we take the definition of the other side, would restrain discounting and lending money on notes, in all cases, as well in respect to individuals as corporations. The statute avoids all promissory notes issued contrary to its provisions, but it never was intended to restrain individuals from issuing them. The real question is whether this be a continued employment; whether it be one regular branch of business with individuals or corporations. It is this alone, which the statute was intended to reach. They must employ the fund mentioned by the statute solely or principally to this purpose, or it is not violated. A single individual was excepted by the act or rather not reached by it ; and this was the ground taken in *Bristol* v. *Barker*,(14 John. 205,) but after the decision of that case came

NEW YORK, the statute of the 21st of April, 1818, extending the same
May, 1824. prohibition of the general restraining act to every individ-
N. Y. Firemen ual in the state, whether acting alone or jointly with others.
Insurance Co. We are then warranted in saying, that the principle conten-
v.
Sturges. ded for, would reach individuals engaged in business. It
takes in the whole commercial world.    There is hardly a
commercial house in the city of New York, which does not
perform banking operations, if this may be called so.    It is
asked where is the limit?    I answer, you must show the
operation followed up for banking purposes.    This is a fact
to be proved on the trial.    Suppose an action for the penal-
ty imposed by the act for banking : would a single act of
discounting, sustain it in evidence ?    No.    The jury could
not find the defendant guilty until this should be shown to
be his regular business.    Indeed, if I understand the cases
of The Utica Insurance Company, they are placed on this
ground, viz ; that they had set themselves up as a banking
institution.    The plea in the last case sets forth that fact,
and had the company been able to traverse this, or that the
note was not issued in the course of such a business, they
would have recovered.    They could not do it, and the plea
was holden good.    It lies with the party seeking to avoid
the note, to show this general object.

Again ; the new act impliedly gives power to negotiate in
this manner, to the new company.  · These have a distinct
duty to perform as trustees, from that which they have a
right to exercise as a company.    In relation to these trusts,
they act as individuals.    Their character, as it stood under
the old or new corporation, does not attach to them.    Years
must elapse before the business of the old company can be
finished, and their concerns settled upon open policies and
other matters.    Must these trustees, during all that time,
confine themselves to a dead deposit ?    Can they not place
their funds out at a profit ?    and this either on bond or note ?
Nor does it lie with the debtor to object that here is a
breach of trust.    Such an objection can be made only by
the *cestuy que trust* in the event of a loss.

The excess of interest depends merely on the mode of
dividing the year into aliquot parts, without any intention of

usury.   It is like taking 365 days for a year, when perchance it is leap year, and contains 366 days.

Woodworth, J.   It was decided in the case of the *Manhattan Company* v. *Osgood*, (15 John. 162,) that discounting a note at seven per cent. and taking interest in advance, was not usury.

By the act of incorporation, no power is given to discount notes.   It was created for the sole purpose of insurance.

The company have no rights, except such as are specially granted, and those that are necessary to carry into effect the powers so granted.   (15 John. 383.)

The act of 27th Feb. 1818, authorizes the directors to close and wind up the business and concerns of the company.

The original note was discounted in 1817, to pay a demand against Ogden & Harrison, and another against Thomas C. Butler ; it exceeded these demands $20.   The excess was paid over to Peters & Harrison, the drawers.   I have no doubt that the plaintiffs might lawfully take notes for pre-existing debts for insurance, and renew them, but the charter gave them no right to discount on the funds or moneys in their hands.   If the charter does not give them banking powers, so far as they travel out of their grant, they act as a company of private persons, and become a mere association, doing business without any express authority by law.   (15 John. 381.)

The restraining act, 2 vol. R. L. 234, applies to an association, institution or company, for the purpose of issuing notes, receiving deposits, making discounts, or transacting any other business, which incorporated banks may do, and declares that all notes given to any such association, institution or company, shall be null and void.   It appears to me that this case does not fall within the words or intent of the statute, for there is no evidence that the plaintiffs associated for the purpose of carrying on, or actually transacted any business prohibited by the act, unless the insulated fact of discounting a note, which exceeded the amount of the debt due

the plaintiffs, $20, was unlawful. This circumstance I pre-
sume was accidental, and most probably has arisen from a
want of knowledge of the precise sum due for insurance
when the note was drawn. The small amount urged as a
discount on the funds of the institution, forbids the conclu-
sion, that it was a business transaction of lending and bor-
rowing. The benefit to be derived by either party, was too
trifling to suppose for a moment, that the note was inten-
tionally drawn to obtain a discount of $20. I infer from
the facts, that Peters & Harrison, intending to assume the
notes held against Ogden & Harrison, and Butler, drew the
note in question, for $1000, about equal to the debt to be
assumed; it turned out, on calculation, that they were enti-
tled to the return of a few dollars, which the plaintiffs ad-
vanced. The restraining act does not apply to such a case,
consequently the note is not void. I am of opinion that the
plaintiffs are entitled to judgment.

SUTHERLAND, J. In this case the note is shown to have
originated in a debt due to the plaintiffs for premiums of in-
surance. The case states, that on the 30th August, 1817,
the plaintiffs were the holders of certain promissory notes,
drawn by Ogden & Harrison, and endorsed by Thomas C.
Butler, amounting to about $500, for premiums of insur-
ance; that, at the same time, Thomas C. Butler was indebt-
ed to the plaintiffs in another sum of upwards of $400; that
Butler offered the plaintiffs a note for $1000, drawn by
Peters & Harrison, for discount, the proceeds to be applied
to be applied to the note of Ogden & Harrison, and the debt
of Thomas C. Butler. It was discounted, the proceeds so
applied, and the balance, about $20, paid to Butler. The
note on which the suit is brought, is a continuation of the
note drawn by Peters & Harrison. It is not expressly stated
in the case, that Butler's debt was for premiums due to the
company; but from the manner in which it is stated, it may
be fairly inferred. In the absence of all proof to the contra-
ry, we should intend that it was a debt of that description.
The plaintiffs had a right to give credit for their premiums;
and to continue the credit by a renewal or discount of notes.

NEW YORK,
May, 1824.

N. Y. Firemen
Insurance Co
v.
St

The parties to the notes being changed on some of the renewals, does not alter the character of the transaction. It was still a debt due for premiums.

Nor does the fact, that the note first discounted exceeded the debt due to the company to a small amount, and that the excess was paid to Butler, vary the case. It was evidently the intention of the parties that the note should be for the amount due only ; but upon stating the account, and casting the interest, there was found to be a trifling difference of $20. This fact will not warrant the inference, that the object of the parties was a loan, and not an extension of credit upon a pre-existing debt.

The discounting of the note in question was not affected by the restraining act ;(*j*) nor was the taking the interest in advance usurious.

The note in this case was payable *in four months*. The question which was discussed in the case of these plaintiffs, against Ely & Parsons,(*k*) as to the principle upon which the interest ought to be calculated, cannot arrise here, except in relation to the days of grace ; and there being no evidence in the case to show upon what principle the interest was calculated, even if there should appear to be a trifling excess, we are authorized, and, I think, bound to presume, that the error was the result of mistake, and not the adoption of an erroneous principle of calculation.

I am, therefore, of opinion, that in this case the plaintiffs are entitled to judgment.

(*j*) Vid. the opinion of Sutherland, J upon this point, in the next case.
(*k*) The next case.

SAVAGE, Ch. J. concurred.

Judgment for the plaintiff.