[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 225 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 226 
There is no force in the objection that the Delaware Bank had not a right to transfer the note in question to the plaintiff. It was negotiable in its terms and according to the general rules of law; and the bank had the same right, which any other holder would have had, to transfer it to another by endorsement, or by delivery under a blank endorsement. Though this position is so plain that one would scarcely expect to find an authority in support of it, it nevertheless happens that it has been distinctly decided by the supreme court of the United States. (Planter's Bank v. Sharp, 6 How., 301, 302.)
The possession of negotiable paper is ordinarily prima facie
evidence of ownership; but the plaintiff in this case went further, and gave affirmative proof that this note had been transferred to him by the bank. No objection was made to the parol evidence of the resolution of the board of directors, nor was the objection even taken that the transfer ought to have been authorized by a previous resolution of the board, according to the provisions of 1 R.S., 591, § 8. (See Eno v. Crooke,M.S., decided in this court, March Term, 1854.) It is unnecessary to decide whether strict proof of such a resolution would have been necessary if a proper objection had been taken, as that question was not raised.
The remaining questions relate to the defence of usury.
(1.) It is well settled that, upon the discounting of commercial paper not having a longer time to run to maturity than the notes and bills which are usually discounted by bankers, interest on the whole amount of principal agreed to be paid at maturity, not exceeding the legal rate, may be taken in advance. It is obvious that in this way the lender, by investing the money thus retained, may realize more than at the legal rate of sevenper centum per annum, and if the case were res nova, it would be difficult to sustain the practice. But we are not authorized to disregard the uniform course of decisions which for a long series of years *Page 228 
have declared it to be legal. The first case in which the question appears to have arisen in this state was The ManhattanCo. v. Osgood, decided in 1818. (15 John., 162.) One of the notes on which the action was brought was for $6000, payable in ninety days, and it had been discounted by the plaintiffs at the rate of seven per cent. The defendant contended that it was usurious and void. But the court held that there was no ground for the objection, "for," they said, "it cannot be questioned but that it has been the uniform practice of all banking institutions since their establishment to exact the payment of interest in advance, and it would be an alarming principle to introduce that all paper thus held should be usurious and void." Certain English cases were referred to, which, with those from other states of the Union, and from the supreme court of the United States, are noticed in the opinion of Chief Justice Savage, hereafter mentioned. At the May term of the supreme court, in the year 1824, three cases were decided, each of which involved this question. In The New-York Fire Insurance Co. v. Sturges (2Cow., 664), the action was on a note for $1000 at four months, which had been originally discounted by an insurance company, in payment of certain debts due to the company, and had been several times renewed, and on each occasion the full amount of the interest for the time the note had to run, including three days of grace, at seven per cent, was retained by the company and the balance, only, allowed to the maker. It was held that there was no usury, the case of The Manhattan Co. v. Osgood being referred to as authority; and judgment was given for the plaintiffs. In the next case, which was that of the same plaintiffs against Ely, the same question was presented upon similar facts. Mr. Justice Sutherland, in delivering his opinion, went more at large into the question and referred to the English cases, and expressed his conclusions in the following language: "The principle to be extracted from these cases, and from a variety of others *Page 229 
which might be cited in confirmation of them, I hold to be this: That the taking of interest in advance is allowed for the benefit of trade, although, by allowing it, more than the legal interest is. in fact, taken; that being for the benefit of trade, the instrument discounted, or upon which the interest is taken in advance, must be such as will and usually does circulate or pass in the course of trade. It must, therefore, be a negotiable instrument, and payable at no very distant day; for without these qualities it will not circulate in the course of trade. Under these limitations, the taking of interest in advance, either by a bank or incorporated company without banking powers, or an individual, is not usurious." (Id., pp. 678, 704.) In this case, judgment was given for the defendant on other grounds. The other case was The Bank of Utica v. Wager (id., 712), where interest had, in like manner, been taken in advance, and where, moreover, it had been calculated by means of tables which, by treating ninety days as one-fourth part of a year, gave more than at the rate of seven per cent per annum. The defendant's counsel were not permitted to argue that the note was usurious because interest instead of discount had been taken in advance. In the principal opinion, however, which was delivered by Savage, C.J., the learned judge goes fully into the question we are considering, examining all the cases in England and in this country, and declaring that the point may be considered as settled in favor of the legality of the practice, "until the legislature shall alter it, if they should think it proper or necessary." Judgment was, however, given in favor of the defendant, on account of the excess which was taken beyond seven per cent by the use of the tables referred to. This judgment was affirmed by the court for the correction of errors. (8 Cow.,
398.) The reporter states that the opinions proceeded upon different views, and that the vote was upon the question of affirmance or reversal generally. From this circumstance, it seems probable that some of the *Page 230 
members of the court of errors were of opinion that taking interest in advance rendered the paper usurious, but that is no evidence that such was the opinion of a majority of the court; and if there was nothing more it could not be said that the course of adjudication in the supreme court had been at all shaken. But in October, 1829, the case of The Bank of Utica v.Phillips (3 Wend., 408) came before the supreme court, presenting the case of interest taken in advance upon the discounting of a note, and the defendant's counsel took the ground that the rule had been changed by the court of errors in affirming the judgment in The Bank of Utica v. Wager. He was interrupted by the court, who said: "We do not understand such to have been the decision of the court. There is nothing in the report of the case showing the opinion of the court upon this point. We held, when the case was before us, in conformity with the decision in the case of The Manhattan Co. v. Osgood, that the taking interest in advance by a banking institution on discounting a note is not usury, and the judgment given by this court is affirmed. What may have been said by one or two members of the court of errors, in delivering their opinion, is not necessarily the judgment of the court. When a point, solemnly and deliberately adjudged by this court, is said to be overruled, it must be clearly and unequivocally shown, or we will consider it our duty to adhere to what we conceive to be the settled law of the land." Judgment was given for the plaintiff. The question was again raised, and I believe for the last time. in 1830, in TheUtica Insurance Company v. Bloodgood (4 Wend., 652), where a distinction was attempted as to a creditor not having banking powers, but it was overruled upon the authorities of the two cases last referred to from the 2d Cowen.
I have been thus particular in collating the authorities, for the reason that the position which they establish is at variance with the natural reading of the statute, and because the practice referred to seems to stand altogether upon the *Page 231 
ground of judicial decision. It does not, however, in my opinion, stand less firmly than it would do if it had the sanction of legislative authority. I disclaim, altogether, any right in this court to overturn a principle which has been established and uniformly acted upon for nearly forty years, and during that time has frequently been reaffirmed by our principal court of original jurisdiction, though it should happen not to have been adjudged by the court of ultimate appeal. I am persuaded that a contrary practice would produce the utmost uncertainty and confusion. As was remarked by Chief Justice Savage, the legislature, should it see cause, could change the rule as to future cases; and it is worthy of attention that, at the time of the general revision of the statutes in 1830, the rule was well established, and had then, very recently, been acted on in the cases reported in Cowen's Reports. It is not unreasonable to suppose that it would have been changed on that occasion had it been thought expedient to do so.
(2.) The error in calculation, by which an excess of less than two dollars was included in one of the notes, does not make the contract usurious. To constitute usury, there must be an illegal agreement, and this cannot be predicated of a case in which the excess was the result of accident or inadvertence, without any knowledge that more than seven per cent was secured by the contract. This has been repeatedly decided. (See the Englishcases referred to in Comyn on Usury, p. 16 and seq.; The N YFireman's Ins. Co. v. Sturges, supra.)
(3.) The exacting of a premium of exchange on the drafts, with which the proceeds of the discounted paper were paid, presents a question of more difficulty, I think, than either of the other points. Some of the protested paper, which formed the consideration of note sued on, was payable in terms in the city of New-York; and the evidence tended to show that portions of the proceeds of such paper were paid in drafts on New-York, upon which a premium *Page 232 
of exchange was charged and allowed. Now, if the contract of the maker or acceptor of this paper had been performed according to its terms, the bank would, at maturity, have received payment at the same place at which its drafts were payable, and consequently of the same value; and, having received the interest for the whole period of credit, it would, in this way, secure the amount of the premium of exchange in addition to the legal interest. Independently of the fact that the bank was to be ultimately reimbursed in the same species of funds which it had advanced, there is no objection upon principle to its receiving the difference of exchange upon the drafts which it gave the borrower instead of its own circulating notes. It had a legal right to loan its own notes; but if the borrower elected to take funds more valuable because they were on deposit at a different place, it was quite right that he should pay this difference in value. The case of The Cayuga County Bank v. Hunt (2 Hill, 635) is precisely in point to sustain the legality of such a transaction. Indeed, the merits of that case presented the same question, in all respects, as the one now under consideration. The action was against the endorser of an accepted bill of exchange, upon a protest for non-payment. The acceptors, at the time of acceptance, and also when the bill matured, resided and had their place of business in New-York, and upon settled principles the bill was payable there. (Chitty on Bills, 172, Springfielded., 1839; Woodworth v. The Bank of America, 19 John.,
392, 408.) The case, therefore, presented the same feature which occasions the doubt entertained in this case; and yet, the bill was held not to be usurious. It is true, the court overlooked the principle which holds that the place of payment was that of the residence of the acceptors, and considered the bill payable in Auburn where the bank was situated. They, however, correctly say that the question of usury does not depend, in cases of this kind, upon accidental circumstances. At the time the *Page 233 
paper in question was discounted by the Delaware Bank, the difference of exchange was against Delaware county. How it would be when the discounted paper should mature, the parties could not certainly know, though, from our knowledge of the course of trade, we may suppose that but little doubt could be entertained upon that point. Still, no one could legally know that the funds in New-York would then be worth more than at Delhi. Again, suppose the discounted paper had been payable at Delhi: in that case the law would be plain, that the payment of the proceeds in drafts charging the premium would not be usury. But the creditor would not have been obliged to receive country money when the paper became payable. He might have insisted upon the debt being paid in specie; or, in default of that, in funds current in New-York, though the practice, no doubt, is to take such money as is current in the locality. These considerations have led me to the conclusion that the transaction was not usurious on account of the payment of this premium of exchange. We do not intend to say what the law would be in a case where the lender should make it a condition of the loan that the borrower should make his paper payable in New-York, and should, upon the discount of such paper, insist upon paying the proceeds in drafts, charging a premium of exchange. There is no evidence that such a condition was insisted upon in respect to this paper. Being satisfied that the case is entirely clear upon the other points, and that the circumstances mentioned do not establish usury, I am in favor of affirming the judgment of the supreme court.