[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 280 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 282 
The point was distinctly made at the close of the plaintiff's evidence, and renewed at the close of the trial, that there was no evidence that the corporation defendant had made any contract of bailment with the plaintiff, or assumed any obligation as bailee of the plaintiff's property, *Page 284 
and that there was no evidence that the officers of the corporation had power, or authority to make in behalf of the corporation any contract of bailment, or assume any liability as a custodian and bailee of the securities of the plaintiff under the circumstances. This is entirely distinct from the very serious question back of it, and to be met if this position of the counsel for the defendant is not well taken, that the defendant had not power or authority to assume the duties and obligations of a naked bailee of property whether gratuituously, or for hire, and that the contract of bailment if one was made by, or in behalf of the corporation, was ultra vires, and imposed no legal obligation upon the corporation as such. Or if the power to become the bailees or depositaries of property for safe keeping be conceded, a question may arise as to the contract implied, and the extent of the obligation assumed by the mere receipt of, and placing the property in the vaults of the bank in the absence of a special contract, in view of the special purposes for which the corporation was created, and the limited powers expressly conferred.
The bonds in question were the absolute property of the plaintiff. The defendant had no special property in them. It had no lien upon them, and they were not deposited or held as a security, for or in connection with the business of the defendant as a banking corporation, or its transactions with the plaintiff, either present or prospective. If a bailment to the defendant it was a simple deposit without interest in or compensation to the depository. It was a naked bailment of property to be kept for the bailor without recompense, and to be returned when the bailor should require it. This is the legal definition of a deposit of this character. (Story on Bailments, § 4.)
The relation of bailor and bailee, imports a trust, and a contract, express or implied, to redeliver the property when the purposes of the trust shall be accomplished, and the contract is supported, in the case of a naked bailment and simple deposit, by the yielding up of the present possession or custody *Page 285 
by the bailor, upon the faith of the engagement of the bailee to redeliver. (Story on Bailment, § 2 and note 4, and cases cited.) The duties and obligations of a bailee cannot be thrust upon one against his consent, but must be voluntarily assumed by the party himself, or some authorized agent, as in every obligation founded upon contract express or implied. A corporation can only act by agents and it follows that it cannot be subjected to the responsibilities and liabilities of a bailee except by the acts and contracts of its agents duly authorized, or by agents acting within the scope of their general powers and apparent authority under circumstances which would estop the corporation from denying that their real was not co-extensive with their apparent authority, or that they were not authorized to exercise the powers usually delegated to like officers and agents in other corporations of the same character. There is an entire absence of evidence that it was the habit and practice of the defendant to receive special deposits and valuable property or securities for safe. keeping, or that they had done it for any other person or corporation, except in the case of O'Kell, a tenant, occupying a part of the same building, as its lessee. It would seem that he had been in the habit of depositing a small trunk, used in his daily business, in the vault of the defendant for safe keeping over night. It was not proved that the directors or any one of them had ever sanctioned the receipt of special deposits of any kind for safe keeping, or that they had any knowledge of the deposit of these securities, or of any other like deposit. If it be assumed that the circular issued by the officers of the defendant inviting the correspondence of other banks, was known to or authorized by the directors, it presented no evidence of a consent to become a general bailee and depositary for their correspondents. A proffer to buy and sell securities comes far short of an undertaking to act as a depositary of them, for an indefinite time, or for any time beyond that necessary to accomplish the precise agency assumed. It is one thing to act as an agent in the purchase and sale of property, and quite another *Page 286 
and a different thing to receive it on deposit, and assume the responsibilities of a bailee. The case is also barren of evidence that other banks were in the habit of receiving deposits of a like character and under like circumstances. There was no attempt to prove a general custom or usage upon the subject even if that could have affected the liability of the defendant, or been given in evidence as tending to prove the authority of the bank officers in the premises.
Both the plaintiff and the defendant were banking corporations incorporated pursuant to the act of Congress entitled "An act to provide a National currency secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof," approved June 3, 1864, known as the "national currency act," and the officers and agents of each must be assumed to be familiar with the powers of the other, and the general powers and duties of its officers. The governing body of national banks is the board of directors, authorized by section 9 of the act, and such board has the management and control of the affairs of the corporation, and may do and transact any and all business within the limits of the powers conferred by the act of Congress. To the extent of the powers given by the act the directors may bind the corporation, and the shareholders, who are the constituent body, and the shareholders are, by section 12, made personally responsible "for all contracts, debts and engagements" of the association to the extent of the amount of their stock therein, in addition to the amount invested in such shares. This responsibility is necessarily limited to such contracts, debts and engagements as may lawfully be made or incurred in the exercise of the corporate powers as limited and prescribed by the act of Congress. The managing officers of corporations formed under the act, those who transact the current business of the association, are appointed by the corporation, which has power to appoint them and define their duties. They are a president, vice-president, and a cashier, and such other officers as may be found necessary, but by whatever name known they only possess such powers *Page 287 
as are delegated by the governing body, or the corporation, either in terms or by implication. (Act, supra, § 8.) There is no evidence that the powers and duties of the managing officers of the defendant were specifically defined by any act or resolution of the corporation or the board of directors. It must be assumed, therefore, and the public, and those dealing or having business transactions with the bank had the right to assume, that they had and exercised the powers and performed the duties usually devolved upon and performed by persons occupying the same position in other banks, and such as they were in the habit of performing in the transaction of the current and ordinary business of the bank, and within this limit the corporation would be bound by their acts in the absence of proof that their powers were limited or restricted, and that such restriction and limitation was known to the person dealing with them. (Story on Agency, § 114, and cases cited in notes.) Whatever may be the extraordinary or incidental powers of the corporation under its charter, power to bind the corporation can only be presumed to exist in its executive agents and officers within the scope of its ordinary business and their ordinary duties. (Life and Fire Ins. Co. v. Mech. Fire Ins. Co., 7 Wend., 31; Minor v. Mech. Bank of Alexandria, 1 Pet., 46;Hoyt v. Thompson, 1 Seld., 320; Leggett v. N.Y. Manf.Co., Sandf. Ch., 541.)
The powers of the corporation defendant are banking powers only, with such incidental powers as may be necessary to carry on the business of banking, with the privilege of buying and selling exchange, coin and bullion. This does not necessarily include the business of a safe deposit company, or business of receiving for safe keeping, and storing for hire, or without compensation, jewelry and valuables, or property of any kind. If the power exists in the corporation as a part of its franchise, it is only as an incident of its principal business. The duties of the executive officer of a banking corporation who is ordinarily the cashier, are very well understood, and while those of the president are not so *Page 288 
well defined, he is but the executive agent of the board of directors, to perform such duties as may be devolved upon him, and is not the corporation, and cannot take the place of the governing board, and make contracts or incur liabilities outside of the ordinary business of the bank without special authority. The corporations formed under the currency act are banks of deposit as well as circulation. They are authorized to issue their own notes for circulation and to receive from others their money and circulate it. Money so received from others is termed a deposit, although it has none of the qualifications of a bailment. There is no trust or promise to redeliver the same money. By the deposit the money becomes the property of the bank, and the relation of debtor and creditor is created between the depositor and the bank. (Commercial Bank of Albany v. Hughes,
17 Wend., 94; Marine Bank v. Fulton Bank, 2 Wallace, 252.) This is the character of the deposit which, by the currency act, the defendant was expressly authorized to receive, and in receiving such a deposit the cashier would be acting within the scope of his authority, and the bank, by his act, would become a debtor to the depositor.
The principal attributes of a bank are, the right to issue circulating notes, discount commercial paper, and receive deposits of money. (Per SPENCER, J., 15 J.R., 390; N YFiremen's Ins. Co. v. Ely, 2 Cow., 673, 710.)
The act of Congress, under which the plaintiff and defendant became incorporated, makes them banking corporations, and confers upon them banking powers, and all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security; by obtaining, issuing, and circulating notes, according to the provisions of the act. The statutory powers and franchise are entirely coincident with the attributes of banking corporations as defined by the law-merchant. The national banking *Page 289 
associations are required, by law, to have on hand, at all times, lawful money to a prescribed amount as a reserve fund; and are permitted to "keep one-half of the lawful money reserve in cash deposits" in the city of New York, but the bonds in controversy were not, and could not have been, deposited with or received by the defendant under this provision of law. (Act, supra, §§ 31, 32.)
The deposit of these bonds cannot be distinguished from a deposit of jewelry or plate, or other valuable property, and was a special transaction not within the ordinary course and business of banking, or necessarily incident to it. If authorized, it added greatly to the risk of loss to the shareholders, without adding to their gains. It was a holding out of greater inducements to burglars and robbers from without, and might prove of greater temptation to dishonesty, on the part of clerks and employes, within the bank. As a business, it could not have been undertaken at the risk and responsibility of the corporation by the executive officers, or without the special authority of the board of directors, and a single transaction was without the general scope of the powers and duties of the executive officers of the institution.
Giblin v. McMullen (L.R. [2 P.C. Cases], 327), was an appeal from the Supreme Court of Victoria. The defendant represented the Union Bank of Australia, and no question was made as to the authority of the manager of the bank to receive the special deposit; and it is expressly said that the railway debentures, which were stolen by the cashier, were placed in the defendant's care by a customer, in the ordinary course of their business as bankers. The case turned upon the liability of the bailee for a theft by the officers of the bank, and the court, following Foster v. Essex Bank (17 Mass., 479), held the defendant not liable. Foster v. Essex Bank was a special deposit of coin, and the bank was held to be the depositary, rather than the cashier or other officers, although not held liable in the action, on the ground of a general recognition and authorization of the practice by the directors; and PARKER, C.J., places the responsibility of the *Page 290 
defendant solely on that ground; and applying the principles of master and servant, and deducing the relation of bailor and bailee, says: "Not so, if the servant secretly, and without the knowledge, express or implied, of the master, he not having authorized or submitted to the practice, receives the goods for such purpose, for no man can be made the bailee of another's property, without his consent; and there must be a contract, express or implied, to induce a liability. The knowledge and permission, expressly found or legally to be presumed in this case, establishes a contract between the parties."
Scott v. National Bank of Chester (72 Penn. St., 471), followed the case last cited, in principle. A case very analogous to, if not in all respects like this in principle, was, Lloyd
v. West Branch Bank (15 Penn. St., 172), and it was adjudged that the cashier had no authority to receive, as a special deposit, a sealed package of small notes, issued by a corporation, without authority of law, and that if so received, without the permission of the directors, or their knowledge of any usage or practice to receive such packages on deposit, the law would not imply a contract on the part of the corporation with the depositor for the safe keeping of the package. COULTER, J., says, that "it was never designed by the provisions of the statute that the bank should be converted into a kind of pawnbroker shop." The case turned upon the point as expressed by the court, that there was "no evidence that the bank made any contract with Oliver (the depositor), express or implied." The whole tenor of authority is in favor of holding corporations for the acts of their officers, especially executive officers and general agents, within the general scope and apparent sphere of their duties, and not holding them for acts done without special authority in cases without such general scope and sphere of duty. The cases are all reconcilable and sustainable on this principle and no other. Courts and judges have spoken cautiously on the subject, but the language has been uniform, limiting the responsibility of corporations for *Page 291 
the acts of their officers and agents, in the absence of an express authority to do the particular act, to those performed in the discharge of their ordinary duties in the usual course of business, and within the sphere and scope of such duties. Such are presumed to be by authority of and within the knowledge of the directors; and within the rule are included such acts as are shown to have been performed with the knowledge and implied consent of the directors, although out of the line of ordinary duty and usual course of business. The duties of the cashier are well understood, and as recognized judicially, are restricted to the care and management of the property and fiscal concerns of the bank, and the conduct of its business as a bank, in the usual and ordinary way. (Story on Agency, §§ 114, 115; Badger v.Bank of Cumberland, 26 Maine, 428; Merchants' Bank v. StateBank, 10 Wallace, 604; Bank of Genesee v. Patchin Bank, 3 Ker., 309.) The president and cashier of a bank cannot assign the choses in action of the corporation to its creditors as a security for the payment of a precedent debt, without authority from the board of directors. They can do no act outside of their ordinary duties in the conduct and management of the banking business, unless by authority, either express or implied from the fact that they have been permitted to do the like acts without objection. (Hoyt v. Thompson, 1 Seld., 320.) Judge WAYNE, inUnited States v. City Bank of Columbus (21 How. [U.S.], 356), says: "The court defines the cashier of the bank to be an executive officer by whom its debts are received and paid, and its securities taken and transferred, and that his acts, to be binding upon a bank must be done within the ordinary course of his duties. His ordinary duties are to keep all the funds of the bank, its notes, bills and other choses in action, to be used from time to time for the ordinary and extraordinary exigencies of the bank. He usually receives, directly or through the subordinate officers of the bank, all the money and notes of the bank, delivers up all discounted notes and other securities when they have been paid, draws checks to withdraw the funds of the *Page 292 
bank when they have been deposited, and, as the executive officer of the bank, transacts most of the business." After this summary of the duties and powers of the cashier, the same judge says that he may not make any contract involving the payment of money not loaned in the usual or customary way, or purchase or sell property, or create an agency of any kind for the bank, unless expressly authorized by those to whom has been confided the power to manage the business of the bank, both ordinary and extraordinary. Judge STORY limits the authority of bank officers, to bind the corporation, to acts and contracts within the ordinary sphere of their duties, and the scope of the ordinary business. (Minor v. Mech. Bank of Alexandria, 1 Peters. 46, 70; Fleckner v. Bank of United States, 8 Wheat., 338; see, also, Fulton Bank v. New York and Sharon Canal Co., 4 Paige, 127.) The doctrine of estoppel may give effect to the acts of the officers of a corporation as against the corporation, as in other cases of principal and agent. (Farmers and Mechanics' Bank v.Butchers and Drovers' Bank, 16 N.Y., 125.) But there is no question of estoppel in this case.
A class of cases were cited by the learned counsel for the plaintiff which do not very directly bear upon the question under consideration. They are those in which a statutory power has been conferred and has been executed, apparently within the terms and in the manner and by the agents prescribed by statute, and a presumption has been allowed in favor of the validity of the execution of the power in favor of those who have in good faith acted upon the apparent compliance with the statute and the terms of the grant. The cases are circumstantially different, but all may be brought within one general principle, and they do not conflict with the views before advanced. Commissioners of KnoxCounty v. Aspinwall (21 How., 539); Royal British Bank v.Turquand (5 E. B., 248; S.C., 6 id., 327); Society forSavings v. City of New London (29 Conn., 174); Commonwealth
v. Pittsburgh (34 Penn. St., 496); Farmers' L. and T. Co. v.Curtis (3 Seld., 466), are among the cases cited by counsel, *Page 293 
and illustrate the principles governing all. They do not touch the principle upon which this branch of the present appeal rests.
No general principle was decided in Van Leuven v. FirstNational Bank of Kingston (54 N.Y., 671). By a divided court it was held that the contract in that case, under the peculiar circumstances, was the contract of the corporation, and not the individual contract of the president. The question now under consideration was not considered by the learned commissioner, and does not appear to have been made in the action.
It was very earnestly and ably urged upon the court by the counsel for the plaintiff that the corporation was liable as a wrong-doer or tort feasor within the principle ofPhiladelphia, Washington and Baltimore Railroad Company v.Quigley (21 How. [U.S.], 202), and other cases which were cited, in which the doctrine was applied under different circumstances. The difficulty with this argument is, that there was no wrong by the corporation, and could be none, if there was no contract. If there was no bailment to the corporation it neglected no duty, and was guilty of no negligence. The whole duty of a bailee rests upon contract, and if there was no contract there was no duty. Neither a corporation or individual can be called upon to pay that which he or it does not owe, and neither is responsible for want of care or for neglect in protecting property of which he or it has not assumed the custody, or any relation of duty or trust in respect to it.
Having arrived at the conclusion that if the power of the corporation to assume the position of bailee, with its responsibilities and obligations, be conceded, there was no evidence of the delegation of the power to the executive and ministerial officers of the bank, and that for that reason the judgment should be reversed and a new trial granted, it is unnecessary to consider the question back of it as to the power of the corporation itself in that direction. It is a question not free from difficulty, but can be more satisfactorily *Page 294 
considered when it becomes (if it shall) necessary to a judgment.
The public are interested in restraining corporations to the enjoyment of the precise franchise granted, and the exercise of the powers expressly conferred, and the incidental powers essential to the express power. Shareholders are also interested in keeping their trustees, the governing boards, within the limits of the delegated power with which they are clothed. It is axiomatic that a corporation can make no contracts and do no acts except such as are authorized by its charter, either expressly or as incidental to its existence. Corporations necessarily depend, both for their powers and the mode of exercising them, upon the construction of the statute which gives them life and being. Whether the receipt of goods and securities on deposit for safe keeping is within the powers, express or implied, of national banks, will not be considered. The case has been considered as one of gratuitous bailment, as that was the theory upon which it was tried. If any other relation existed between the parties in respect to the bonds than that of bailor and bailee without compensation, or any other obligation or liability rested upon the defendant other than that which would result from such relation, it must be developed on another trial.
Since writing the above the case of Wiley v. First NationalBank of Brattleboro, recently decided by the Supreme Court of Vermont, has come to my notice. That learned court held that the cashier of a national bank has no power to receive special deposits in behalf of the bank for the accommodation of the depositor, or to bind the bank to any liability on any express contract accompanying, or any implied contract arising out of such taking, and the judgment is sustained by a well considered opinion of Judge WHEELER. In his views I fully concur.
Several exceptions were taken at the trial to the admission and exclusion of evidence, some of which we think were well taken. The defendant was a gratuitous bailee, that is, a depository without compensation for the benefit *Page 295 
of the bailor, and was, therefore, only liable for gross negligence, which is defined in various ways. The term itself has been quarreled with, but it still has a place in the law, and must have, so long as the measure of liability implied by the term is recognized, and until some better term can be invented to give expression to it. It is incapable of precise definition, and its application and use may lead, in some cases, to results unsatisfactory; but that comes as directly from the nature and extent of the duty in the particular case, as from the phrase by which a breach of the duty is expressed. I cannot but think that, in this case, the defendant was held to a higher standard of obligation than the circumstances warranted, but the question is not before us. What constitutes gross negligence, that is, such want of care as would charge a gratuitous bailee for loss, must depend very much upon the circumstances to which the term is to be applied. It has been defined to be the want of that ordinary diligence and care which a usually prudent man takes of his own property of the like description. (Giblin v. McMullen,supra.) This definition is given by a reference to the degree of care, rather than the degree of negligence which may be the easier and more intelligible mode of defining the extent of the obligation, and the measure of duty assumed. Ordinary care as well as gross negligence, the one being in contrast with the other, must be graded by the nature and value of the property and the risks to which it is exposed. A depositor of goods or securities for safe keeping with a gratuitous bailee can only claim that diligence which a person of common sense, not a specialist or expert in a particular department, should exercise in such department. (Wharton on Negligence, § 470.) The bank, as depositary, taking no pay and taking no risks, was not bound to resort to any special or extraordinary measures to protect the property of the depositor, and the negligence for which it could be charged, or which was the proper subject of evidence upon the trial, was only that which was connected with, and directly contributed to the loss. Independent acts *Page 296 
of negligence, disconnected with the loss, were not properly admissible in evidence. (Scott v. National Bank of ChesterValley, supra.)
The defendant was not chargeable with negligence or want of care for not acting upon facts or circumstances not coming to the knowledge of its directors or officers. Facts not brought home to them, tending to show that the property was exposed to loss from some unusual cause, to some peril growing out of peculiar circumstances, were not admissible in evidence against the defendant. The bailee was only called upon to take such care as became necessary to protect it against risks known to it, or of which it had notice. There was great latitude in the evidence on the part of the plaintiffs, and some of it was quite dramatic in its character, the purpose and end was to show that the place of deposit was peculiarly and extraordinarily exposed to perils from robbers at that time, calling for more than the usual cautions from the bailee. This was competent, so far as facts and circumstances proved to exist were communicated to the officers of the bank, but no farther. Without stopping to inquire whether all the evidence of this character was competent, or whether all the facts, which, if known, might have alarmed the officers of the bank, and stirred them up to greater diligence, were made known to them, I will refer to a single exception which is fatal to the recovery. The plaintiff was permitted to prove a conversation between one Holley and the president of the bank, immediately after the robbery, in which the president, Mr. Martin, was made to say, "For God's sake and mine, never make mention of any conversation that has ever passed between you and me, in relation to the robbery of this bank." Holley had testified to several prior conversations, in which he claimed to have made known to the president some attempt by burglars to enter the bank building, and of indications of an intended robbery, and urged upon him the necessity of greater precautions. The admission of the evidence which formed the subject of the exception is sought to be justified as the act of the defendant, by its authorized *Page 297 
agent, to suppress testimony, to conceal and cover up evidence. The statement or request, if made by Mr. Martin, was only material as an implied admission of culpable negligence on his part, that which would subject him to censure, and, perhaps, loss of place; and if this deposit was in his mind, possibly charge the bank with its value. That it was in the mind of Martin, or that he intended to suppress, or foresaw the necessity of suppressing evidence in any action in a court of justice, there is not the least evidence. The request was made, doubtless, if made at all, to save himself and his acts from criticism, and for no other purpose; and it was only important as an admission, by implication, of neglect in protecting the bank against the robbery. If made for the purpose suggested, it was not an act by the corporation. He did not, in that conversation, although he may have supposed he was acting in the interest of the bank, represent it. He had no authority to speak or act for it, and it could not be affected by his acts and declarations made after the transaction, and when not acting within the limit of his authority, or in respect to a business over which he had authority to act for the bank. He had no incidental authority to make any declarations, binding upon the bank, in matters not within the scope of his ordinary duties. (Story on Agency, § 115.) An authority to speak and act for the corporation, in respect to litigations not pending or even anticipated, cannot be presumed. As a mere declaration or admission, tending to prove the fact in issue, it was not admissible, and should have been excluded. There is no principle upon which its admission can be sustained, and it should have been excluded. (Luby v. HudsonRiver R.R. Co., 17 N.Y., 131; Hamilton v. N.Y.C.R.R. Co.,
51 id., 100; Anderson v. R., W. and O.R.R. Co., 54 id., 334;Packet Boat Co. v. Clough, MS. opinion of Judge STRONG, U.S. Sup. Ct., Oct. 7, 1874.)
The declarations of agents are only admissible when made as part of the res gestæ, or in the performance of the duties of their agency.
The judgment must be reversed, and a new trial granted. *Page 298 
RAPALLO and ANDREWS, JJ., concur; all the other judges concur in result.
Judgment reversed.